UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADELINE MENDOZA, | ) | |
| | ) | Case No. 23-cv-2441 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Durkin |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MARILYN MULERO, | ) | |
| | ) | Case No. 23-cv-14795 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Maldonado |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' PARTIAL MOTION TO DISMISS**

Defendants respectfully move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Fourteenth Amendment fabricated evidence claims brought by Plaintiff Marilyn Mulero and Plaintiff Madeline Mendoza (collectively, "Plaintiffs"). Because each Plaintiff pled guilty, neither can establish the requirement that the allegedly fabricated evidence was used against her at trial. In addition, regarding Mendoza specifically, because she does not allege that her guilty plea was involuntary, she cannot establish causation as a matter of law.

**INTRODUCTION**

Plaintiffs bring two separate lawsuits deriving from the same incident: the convictions resulting from their respective guilty pleas to the 1992 murders of Hector Reyes and Jimmy Cruz, and the subsequent vacatur of those convictions. Plaintiffs advance a host of claims against

1

Defendants arising under § 1983 and Illinois state law, the overwhelming majority of which Defendants do not seek to dismiss at this Rule 12(b)(6) stage. Rather, Defendants narrowly seek to prune a single theory of liability, fabricated evidence, which Plaintiffs plead as a violation of their Fourteenth Amendment right to a fair trial.

But each Plaintiff pled guilty. Which means neither Plaintiff had a trial. And according to the Seventh Circuit's recent pronouncement on the matter, that means there is no fabricated evidence claim to be had. A Fourteenth Amendment unfair trial claim predicated on allegedly fabricated evidence only lies where that evidence is "introduced at trial," and just as importantly, it does not lie where the evidence is merely used during criminal proceedings "in some way." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). Plaintiffs' unfair trial claims based on fabricated evidence should thus be dismissed, as there were no trials in which the evidence could have been introduced—a necessary element to proving any such claim.

In addition, the tort requirement of causation separately warrants dismissal of Mendoza's fabricated evidence cause of action. Only Mulero has alleged that her guilty plea was involuntary; Mendoza alleges nothing of the sort. As a result, Mendoza's guilty plea, which she concedes was knowing and voluntary, amounted to a break in the causal chain, and the plea alone stands as the superseding, intervening cause of her conviction and incarceration. Thus, as a matter of law, the alleged procurement of fabricated evidence could not have amounted to the cause of her injuries. Because of this failure to plead the requisite element of causation, Mendoza's fabricated evidence claim should be dismissed.

**PLAINTIFFS' ALLEGATIONS**[1]

On May 11, 1992, shortly before midnight, Mulero, Mendoza, and third party Jackie Montanez were in Humboldt Park with two Latin King street gang members: Hector Reyes and Jimmy Cruz. (Mulero Compl. ¶ 32.[2]) Minutes later, around 12:15 AM on May 12, Montanez followed Hector Reyes into a bathroom and fatally shot him in the back of the head. (*Id.* ¶ 33.) After Montanez exited the bathroom, she shot Jimmy Cruz in the back of the head, killing him, as well. (*Id.* ¶ 33.) Plaintiffs allege that neither of them—Mulero nor Mendoza—had any prior knowledge that the shootings were going to occur, nor did they participate. (*Id.* ¶ 34; Mendoza Am. Compl. ¶ 15.[3])

This case largely centers on allegations that two former Chicago Police Officers—Defendant Reynaldo Guevara and deceased Defendant Ernest Halvorsen—(1) fabricated witness statements implicating Plaintiffs in the Cruz and Reyes murders, causing Mendoza to falsely confess and both Plaintiffs to plead guilty, and (2) separately coerced a false confession from Mulero, which also caused her to plead guilty.

Specifically, Plaintiffs allege that statements from five separate witnesses—Yvette Rodriguez, Rhonda Riley, Jackie Serrano, Marilyn Serrano, and Joan Roberts—which implicate Plaintiffs in the murders, were fabricated by Guevara and Halvorsen. (Mulero Compl. ¶¶ 60, 62–66, 69–73, 78, 80–81, 84, 90–92, 94; Mendoza Am. Compl. ¶¶ 19(c)–(e).) According to Mendoza, because she "knew that it would be impossible to prove that the individual officers had concocted the evidence against her," she confessed and pled guilty on September 22, 1993, to the

---

[1] Defendants deny all claims asserted against them. They treat Plaintiffs' factual allegations as true only for purposes of this Partial Motion to Dismiss.
[2] The Mulero Complaint cited throughout this Motion is located at Dkt. 1 in Case No. 1:23-cv-04795, *Mulero v. Guevara, et al.* (N.D. Ill.).
[3] The Mendoza Amended Complaint cited throughout this Motion is located at Dkt. 26 in Case. No. 1:23-cv-02441, *Mendoza v. City of Chicago, et al.* (N.D. Ill.).

murder of Cruz and to conspiracy to murder Reyes. She was sentenced to thirty-five years for murder—concurrent to seven years for conspiracy—and was released from prison in 2009. (Mendoza Am. Compl. ¶¶ 24–26.)

Mulero, whose Complaint does far more work in spelling out the details of the five witnesses' fabricated statements, nevertheless does not actually attribute her false confession to these allegedly false statements. While she does allege that Rodriguez's fabricated statements led to her arrest, (Mulero Compl. ¶ 42), Mulero tethers her later-provided confession to Guevara and Halvorsen's purportedly coercive interrogation tactics following her arrest. (*Id.* ¶¶ 42–59.) On September 27, 1993, Mulero pled guilty to first degree murder, which she alleges was "involuntary" and occurred because of both her coerced confession and the fabricated statements of witnesses. (*Id.* ¶¶ 99–102.) She served twenty-eight years in prison. (*Id.* ¶¶ 112, 116.)

Both Plaintiffs' convictions have since been vacated, leading to these lawsuits. (*Id.* ¶¶ 6, 10; Mendoza Am. Compl. ¶¶ 5–6.) This Partial Motion to Dismiss is dedicated exclusively to Plaintiffs' Fourteenth Amendment fabricated evidence claims, which flow from the allegedly false statements discussed above, (Mulero Compl. ¶¶ 133–39; Mendoza Am. Compl. ¶ 49), and should be dismissed because of Plaintiffs' guilty pleas.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must provide the grounds of their "entitlement to relief[, which] requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[I]f as a matter of law it is clear that no relief could be granted under any set of facts that could be proved

4

consistent with the allegations, a claim must be dismissed, without regard to whether it is based…on a close but ultimately unavailing [legal theory.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citation and internal quotation marks omitted), *superseded by statute on other grounds*, Prison Litig. Reform Act of 1995, 42 U.S. § 1997e, *as recognized in Irizarry v. Secretary, Fla. Dep't of Corr.*, No. 21-10591-A, 2021 WL 3231163 (11th Cir. July 22, 2021).

## ARGUMENT

**I.    Plaintiffs Cannot Establish the Element of a § 1983 Fabricated Evidence Claim Requiring that the Allegedly Fabricated Evidence Be Used at Trial**

Plaintiffs admit that they pled guilty in their underlying criminal cases. (Mulero Compl. ¶ 101; Mendoza Am. Compl. ¶ 25.) Thus, they concede there were no trials and consequently no introduction of evidence (fabricated or otherwise) against them at any trial. For that reason alone, there is no fabricated evidence claim available to either Plaintiff. As one district court succinctly put it, because "Plaintiff[s] pled guilty, and the alleged fabricated evidence against [them] was not used at trial, Plaintiff[s] ha[ve] failed to plead a viable stand-alone fabricated evidence claim." *Brown v. Elmwood Park Police Dep't*, Civil Action No. 19-9565 (SDW), 2019 WL 2142768, at *2 (D.N.J. May 16, 2019).

"To prevail" on a fabricated evidence unfair trial claim, a plaintiff must prove that "'there is a reasonable likelihood the evidence ***affected the judgment of the jury***.'" *Moran v. Calumet City*, 54 F.4th 483, 498 (7th Cir. 2023) (quoting *Patrick*, 974 F.3d at 835) (emphasis added). This has been the case in the Seventh Circuit for years. In 2014, the court noted that its analysis of the fabricated evidence tort centered on cases that "involved not merely the fabrication, but the introduction of the fabricated evidence at the criminal defendant's trial." *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014). "For if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is…no tort." *Id*. In 2017, the court

took up the issue once more, making clear *again* that a due process claim based on fabricated evidence is viable only if the allegedly fabricated evidence was admitted against a plaintiff at trial and caused the plaintiff's conviction:

> A § 1983 claim requires a constitutional violation, and the due-process violation wasn't complete until the [fabricated evidence] was ***introduced at Avery's trial***, resulting in his conviction and imprisonment for a murder he did not commit. After all, it was the admission of the [fabricated evidence] that made Avery's trial unfair.

*Avery v. City of Milwaukee*, 847 F.3d 433, 442 (7th Cir. 2017) (emphasis added).

Then, with its 2020 decision in *Patrick*, the court yet again affirmed the scope of fabricated evidence as being confined to evidence introduced at trial. Regarding the plaintiff's fabricated evidence claim, the *Patrick* defendants argued the trial court erred by refusing to include additional jury instruction language that the plaintiff was required to prove that the allegedly fabricated evidence was used at his criminal trial and was material to his conviction. 974 F.3d at 834–35. Addressing that argument, the Seventh Circuit reiterated that to sustain a due process claim based on fabricated evidence, a plaintiff must indeed prove that the allegedly fabricated evidence was used at the plaintiff's criminal trial and was material to her conviction:

> We have recently clarified the contours of constitutional claims based on allegations of evidence fabrication. A claim for false arrest or pretrial detention based on fabricated evidence sounds in the Fourth Amendment right to be free from seizure without probable cause. **If fabricated evidence is later *used at trial* to obtain a conviction**, the accused may have suffered a violation of his due-process right to a fair trial.

*Id.* at 834 (emphasis added). In language the Seventh Circuit continues to rely upon since *Patrick* was issued, the court then held that a "conviction premised on fabricated evidence will be set

aside if the evidence was material—that is, if there is a reasonable likelihood the evidence affected the judgment of the jury." *Id.* at 835; *see Moran*, 54 F.4th at 498 (quoting same).[4]

Applying these principles of law, the Seventh Circuit in *Patrick* agreed with the defendants that the instruction submitted to the jury by the trial court was "incomplete in that it failed to explain that [the plaintiff] had the burden to prove that the fabricated evidence was used against him at his criminal trial and was material." 974 F.3d at 835. The court also pointed out that its pattern instruction on a fabricated evidence claim provides that a plaintiff **must** prove, as elements of the claim, that the fabricated evidence was introduced at trial and was material. *Id.*; *see also* Federal Civil Jury Instructions of The Seventh Circuit § 7.14 (2017).[5]

All of which to say, the Seventh Circuit has made abundantly clear that, in the absence of a trial, the constitutional remedies that are available to Plaintiffs based on an alleged fabrication of evidence (if proven) would be claims for post-legal process, pre-trial detention without probable cause under the Fourth Amendment, and the Fourth Amendment alone. To that end, district courts are no strangers to rejecting Fourteenth Amendment fabricated evidence claims where guilty pleas, rather than trial verdicts, caused a conviction. *See Brown*, 2019 WL 2142768, at *2 (even where a civil plaintiff "belie[ves] that he had proven that the evidence against him

---

[4] Trial courts in this district routinely follow this black-letter law. *See, e.g., Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 725 (N.D. Ill. 2016) ("nothing about the lineup procedure was introduced at plaintiff's criminal trial," such that "even assuming the defendant officers did fabricate their reports regarding the lineup, an evidence fabrication claim cannot be sustained because the allegedly fabricated evidence was not used at plaintiff's trial"); *Ulmer v. Avila*, 15 CV 3659, 2016 WL 3671449, at *8 (N.D. Ill. July 11, 2016) ("*Whitlock* …is distinguishable from the present case," as the *Whitlock* court "found that the fabrication of evidence caused harm because it was introduced against the defendants at trial and 'was instrumental in their convictions'") (quoting *Whitlock v. Brueggeman*, , 682 F.3d 567, 582 (7th Cir. 2012)); *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1048 (N.D. Ill. 2015) ("nowhere did *Fields* question the requirement that the fabricated evidence must be introduced at trial; to the contrary, it reaffirmed that requirement").

[5] Although the Seventh Circuit found the trial court erred in refusing the defendants' instruction, it also found the error to be harmless because there was no dispute that the allegedly fabricated evidence was admitted at the plaintiff's criminal trial and no argument that the evidence was immaterial. *Patrick*, 972 F.3d at 835–36.

was fabricated," where he "did not proceed to trial, but instead chose to plead guilty," he cannot "plead a viable stand-alone fabricated evidence claim" under the Fourteenth Amendment).

To be clear, Defendants recognize courts in the Northern District have allowed fabrication claims to proceed despite a guilty plea. *See*, *e.g.*, *In re Watts*, No. 19-cv-1717, 2022 WL 9468206, *3–4 (collecting cases). Specifically, in *Watts*, the court found that Seventh Circuit jurisprudence suggests that a "due process violation occurs once the material fabricated evidence is introduced in some way" in a criminal defendant's "criminal case," rather than at the trial specifically. *Id.* at *9 (N.D. Ill. Oct. 14, 2022) (citation and internal quotation marks omitted). Thus, the plaintiff's guilty plea in *Watts* was held not to preclude a fabricated evidence claim, as the evidence at issue was allegedly used against the plaintiff via the "present[ation of] the evidence at a preliminary hearing or to a grand jury, as required by Illinois law." *Id.* at *8 (citation and internal quotation marks omitted).

However, the court acknowledged that its decision was tenuous in light of *Patrick*. *Id.* at *9. As the *Watts* court conceded, "*Patrick*'s rejection of an instruction that stated that fabricated evidence 'was used to deprive Plaintiff of his liberty *in some way*' in favor of an instruction stating 'that the fabricated evidence was used against Plaintiff at his criminal trial' makes the question before the Court—whether a fabricated evidence due process claim can be premised on a guilty plea—a close call." *Id.* (quoting *Patrick*, 974 F.3d at 835).

Respectfully, the *Watts* court's conclusion injects an internal inconsistency into *Patrick* that the Seventh Circuit itself did not put to paper. *Watts* expressly found that due process is implicated by fabricated evidence when that evidence is introduced "in some way" in the criminal proceedings. 2022 WL 9468253, at *8–9. The Seventh Circuit **explicitly rejected an instruction concerning fabricated evidence being used "in some way."** *Patrick*, 974 F.3d at

8

835. Had the Seventh Circuit desired to broaden the fabricated evidence tort to the full of criminal proceedings, irrespective of the occurrence of a trial, it could have done so. But it did not. To the contrary, it flatly rejected this construction in favor of a framing that confines the tort to the introduction of fabricated evidence at a criminal trial.

And the Seventh Circuit's jurists, "careful writers" that they are, "say what they mean and mean what they say." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514 (N.D. Ill. 2018). Should the Seventh Circuit find occasion to revisit the issue, only then can the tort be broadened via judicial fiat. Until then, "[j]ust as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of th[e Seventh Circuit] whether or not they agree." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (citations omitted).

The Seventh Circuit was clear: per *Patrick*, and contrary to *Watts*, fabricated evidence does not give rise to a Fourteenth Amendment claim unless it has been introduced as evidence at trial. *Patrick*, 974 F.3d at 835. The due process right Plaintiff is asserting is a right to a fair *trial*. The Fourth Amendment protects Plaintiff in pretrial proceedings, but a Fourteenth Amendment due process fabrication claim is premised upon the fairness of the *trial*. Thus, the due process fabrication claim can be made only when the evidence is used at a "criminal trial and was material." *Id*. Here, because Plaintiffs expressly admit that they never went to trial, they have pleaded themselves out of court on their Fourteenth Amendment fabricated evidence claims. The fabrication of evidence claims should be dismissed, with prejudice, as a result.

II.     **Plaintiff Mendoza's Guilty Plea Broke the Causal Chain**

In addition, the Supreme Court has long held that a guilty plea breaks the causal chain between any unconstitutional acts that precede the plea and the conviction/imprisonment that

Case: 1:23-cv-02441 Document #: 52 Filed: 12/15/23 Page 9 of 16 PageID #:129

835. Had the Seventh Circuit desired to broaden the fabricated evidence tort to the full of criminal proceedings, irrespective of the occurrence of a trial, it could have done so. But it did not. To the contrary, it flatly rejected this construction in favor of a framing that confines the tort to the introduction of fabricated evidence at a criminal trial.

And the Seventh Circuit's jurists, "careful writers" that they are, "say what they mean and mean what they say." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514 (N.D. Ill. 2018). Should the Seventh Circuit find occasion to revisit the issue, only then can the tort be broadened via judicial fiat. Until then, "[j]ust as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of th[e Seventh Circuit] whether or not they agree." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (citations omitted).

The Seventh Circuit was clear: per *Patrick*, and contrary to *Watts*, fabricated evidence does not give rise to a Fourteenth Amendment claim unless it has been introduced as evidence at trial. *Patrick*, 974 F.3d at 835. The due process right Plaintiff is asserting is a right to a fair *trial*. The Fourth Amendment protects Plaintiff in pretrial proceedings, but a Fourteenth Amendment due process fabrication claim is premised upon the fairness of the *trial*. Thus, the due process fabrication claim can be made only when the evidence is used at a "criminal trial and was material." *Id*. Here, because Plaintiffs expressly admit that they never went to trial, they have pleaded themselves out of court on their Fourteenth Amendment fabricated evidence claims. The fabrication of evidence claims should be dismissed, with prejudice, as a result.

II.     **Plaintiff Mendoza's Guilty Plea Broke the Causal Chain**

In addition, the Supreme Court has long held that a guilty plea breaks the causal chain between any unconstitutional acts that precede the plea and the conviction/imprisonment that

follow the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process") (referring to *Brady v. United States*, 397 U.S. 742 (1970), *McMann v. Richardson*, 397 U.S. 759 (1970), and *Parker v. N.C.*, 397 U.S. 790 (1970)); *see also Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013) ("'guilty plea represents a break in the chain of events which has preceded it in the criminal process'") (quoting *Tollett,* 411 U.S. at 267).

Because a guilty plea breaks the preceding chain of events, any constitutional violations that occurred before the plea cannot serve as the cause of injuries suffered from conviction and imprisonment—unless the plea itself is subject to the narrow attack that it was not voluntary or knowing. *Tollett,* 411 U.S. at 267. Here, only Mulero alleges that her plea was involuntary, (Mulero Compl. ¶ 102), and thus she has pled enough to show her guilty plea did not break the causal chain—at least at this Rule 12(b)(6) stage, where Defendants must accept her allegations as true.

For Mendoza, however, who never once alleges that her plea lacked knowing or voluntariness, lack of causation requires dismissal. *McMann* is particularly instructive. There, three defendants seeking to vacate their guilty pleas argued their pleas were induced by constitutionally tainted evidence (physically coerced confessions) and therefore their pleas were involuntary and should be vacated. *McMann,* 397 U.S. at 761–64. Specifically, the defendants claimed the tainted evidence was crucial to the State's cases, such that but for the existence of that evidence, they would not have pleaded guilty. *Id*. at 768. The Supreme Court rejected any notion that the pleas were involuntary, remarking:

> A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his

>admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. ***Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act.***

*Id.* at 769 (emphasis added).

Similarly here, Mendoza chose to plead guilty, rather than take her chances at trial. In electing to knowingly plead guilty, she also chose to waive the due process rights a trial would have afforded her. Having waived her right to trial, the very purpose of which is to "effectuate due process," Mendoza cannot now "blame" her guilty plea—which caused her conviction and subsequent incarceration—on pre-plea due process violations that simply did not occur. *McMann*, 397 U.S. at 769 (defendant could have chosen to go to trial and contest the State's tainted evidence, including through appellate and collateral proceedings, such that "[i]f he nevertheless pleads guilty the plea can hardly be blamed on the [tainted evidence]").

Defendants acknowledge that this argument too was raised and rejected in *Watts*. The *Watts* court conceded, however, that "it is settled law that, absent some important exceptions, generally a plea executed with the benefit of counsel operates as a waiver of all formal defects in the proceedings (even constitutional defects)," subject only to an "attack [on] the voluntary and intelligent character of the guilty plea." 2022 WL 9468253, at *9 (citations and internal quotation marks omitted). In a footnote, the court ultimately concluded that there was simply not enough factual matter available to enter a finding that the *Watts* plaintiff's plea was voluntary, and thus amounted to a waiver of any other constitutional defects. *Id.* at *10 n.13. In essence, the *Watts* court found that a conclusory allegation that fabricated evidence was used to compel a guilty plea, in the absence of a more developed factual record, adequately alleged causation for 12(b)(6) purposes. *Id.* at *10.

Respectfully, Defendants submit that this *Watts* finding neither appropriately gauges the Rule 12(b)(6) standard of review nor meaningfully grapples with the settled law that cuts off the causal chain at the moment a guilty plea enters, lest that plea was involuntary. Regarding the former, the Rule 12(b)(6) "standard 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Bldg. Owners & Managers Ass'n of Chicago v. City of Chicago*, 513 F. Supp. 3d 1017, 1011 (N.D. Ill. 2021) (quoting *Iqbal*, 556 U.S. at 678). Yet in *Watts*, that is all Plaintiff pled.

Regarding causation, per the court, the *Watts* plaintiff merely alleged that "because he knew that he could not prove that the Individual Officers had brought false charges against him," "he pled guilty." 2022 WL 9468253, at *10. But those allegations simply do not attend the causation requirement of voluntariness, as espoused in cases like *Tollett* and *McCann*. Indeed, it seems the *Watts* court was aware of this. In footnote 13, the court noted that the "facts" it would need to determine whether the plea was voluntary enough to waive constitutional defects included whether there was a written plea agreement, whether the plaintiff swore under oath and confirmed the guilty facts when the judge accepted his plea, and whether his plea specifically addressed and waived trial rights. Id. at *10 n.13. As in *Watts*, Mendoza declines to make any such allegations here.

But those allegations are all well within Mendoza's knowledge right now. As this Court recently noted, "[w]hile detailed factual allegations are not required," Mendoza's complaint must still "'contain **sufficient** factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bldg. Owners*, 513 F. Supp. 3d at 1011 (citations and internal quotation marks omitted) (emphasis added). The *Watts* court's election to reward an *absence* of factual pleading—especially as to facts highly specific to the plaintiff himself that were assuredly within

his knowledge—with an implicit finding of involuntariness turns this standard on its head. Defendants ask the Court not to make the same error here, and instead hold Mendoza, who does not so much as allege the notion of involuntariness, to the low bar set by the Federal Rules of Civil Procedure's already-forgiving pleading standards.

Finally, well-settled law compels a finding that Mendoza's plea, by her own admission, severed the causal relationship between any purportedly fabricated evidence and the injuries she allegedly suffered via conviction and incarceration. Because Mendoza concedes that she pled guilty and does not allege that her plea was involuntary, she cannot establish causation as a matter of law, warranting dismissal. *See Perkins v. N.Y.C.*, No. 17-CV-423 (RRM) (PK), 2019 WL 4736950, at *7 (E.D.N.Y. Sept. 27, 2019) (dismissing fabricated evidence claim at 12(b)(6) stage because plaintiff's "post-conviction incarceration…was ultimately caused, not by purportedly fabricated evidence, but by the plaintiff's decision to plead guilty," which "constitutes a superseding cause of [p]laintiff's conviction and imprisonment, precluding plaintiff from recovering damages arising out of his conviction and incarceration") (citations and internal quotation marks omitted); *Barmapov v. Barry*, No. 09-CV-3390 (RRM) (RRL), 2011 WL 32371, at *6 (E.D.N.Y. Jan. 5, 2011) (same).

The *Watts* court does not engage with this body of law, instead electing to withhold judgment at the 12(b)(6) stage until a more complete factual record is developed. For the reasons just stated, Defendants submit that such a decision is incompatible with Rule 12(b)(6) and untenable in light of the black letter law providing that constitutional defects in a plea are waived where said plea is voluntary. An allegation of involuntariness is a baseline requirement of any claim attacking the constitutionality of a plea. Mendoza should not benefit from her failure to

make so fundamental an allegation, but rather her fabricated evidence claim should be dismissed as consequence.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiffs' fabricated evidence claims, with prejudice.

Dated: December 15, 2023

/s/ Eileen E. Rosen
EILEEN E. ROSEN, Atty No. 3217428
*One of the Attorneys for City of Chicago*

Special Assistant Corporation Counsel
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
P: (312) 494-100
erson@rfclaw.com

RESPECTFULLY SUBMITTED,

/s/ Thomas J. Sotos
THOMAS J. SOTOS, Atty No. 6327630
*One of the Attorneys for Defendants Gawrys, Riccio, Biebel and Special Representative Yanow*

Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60604
P: (630) 735-3300
tsotos@jsotoslaw.com

/s/*Emily E. Schnidt*
EMILY E. SCHNIDT, Atty No. 6298680
*One of the Attorneys for Reynaldo Guevara*

Special Assistant Corporation Counsel
Borkan & Scahill, Ltd
20 S. Clark Street, Suite 1700
Chicago, IL 60603
P: (312)580-1030
eschnidt@borkanscahill.com

**CERTIFICATE OF SERVICE**

I certify that on December 15, 2023, I electronically filed the foregoing **Defendants' Partial Motion to Dismiss,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

***Attorneys for Plaintiff Mendoza***:
Kenneth N Flaxman (knf@kenlaw.com)
Joel A. Flaxman (jaf@kenlaw.com)
Kenneth N. Flaxman, P.C.
200 S. Michigan Avenue, Suite 201
Chicago, IL 60604-6107
P: (312) 427-3200

***Attorneys for Plaintiff Mulero***:
Steven A. Hart (shart@hmelegal.com)
Carter D. Grant (cgrant@hmelegal.com)
John S Marrese (JMarrese@hmelegal.com)
Brian H. Eldridge (beldridge@hmelegal.com)
John W. Chwarzynski, Jr. (jwc@hmelegal.com)
Julia A. Murphy (jmurphy@hmelegal.com)
Hart McLaughlin & Eldridge, LLC
1 S. Dearborn, Suite 1400
Chicago, IL 60603
P: 312-955-0545

Antonio Maurizio Romanucci (aromanucci@rblaw.net)
Bhavani Keeran Raveendran (b.raveendran@rblaw.net)
Bryce Thomas Hensley (bhensley@rblaw.net)
Sam Harton (sharton@rblaw.net)
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
P: (312) 458-1000

***Attorneys for the City of Chicago***
Eileen E. Rosen (erosen@rfclaw.com)
Andrew J. Grill (agrill@rfclaw.com)
Austin G. Rahe (arahe@rfclaw.com)
Catherine M. Barber (cbarber@rfclaw.com)
Jessica Zehner (jzehner@rfclaw.com)
Lauren M. Ferrise (lferrise@rfclaw.com)
Theresa B. Carney (tcarney@rfclaw.com)
Rock, Fusco & Connelly
333 West Wacker Drive, 19th Floor

Chicago, IL 60606
P: (312) 494-1000

***Attorneys for Reynaldo Guevara***
Steven B. Borkan (Sborkan@borkanscahill.com)
Timothy P. Scahill (tscahill@borkanscahill.com)
Graham P. Miller (gmiller@borkanscahill.com)
Emily E. Schnidt (eschnidt@borkanscahill.com)
Mischa Itchhaporia (mitchhaporia@borkanscahill.com)
Molly E. Boekeloo (mboekeloo@borkanscahill.com)
Whitney N. Hutchinson (whutchinson@borkanscahill.com)
Kathryn E. Boyle (kboyle@borkanscahill.com)
Borkan & Scahill
20 S. Clark Street, Suite 1700
Chicago, IL 60603
P: 312-580-1030

/s/ Thomas J. Sotos
THOMAS J. SOTOS, Atty No. 6327630