**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MADELINE MENDOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-2441 |
| -vs- | ) | |
| | ) | Judge Durkin |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Judge Kim |
| Defendants. | ) | |
| | | |
| MARILYN MULERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-4795 |
| -vs- | ) | |
| | ) | Judge Durkin |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Judge Kim |
| *Defendants.* | ) | |

**DEFENDANT CITY OF CHICAGO'S OBJECTIONS TO PLAINTIFFS' AMENDED**
***MONELL* INTERROGATORIES**

Defendant, City of Chicago ("City"), by and through its undersigned attorneys, in accordance with this Court's order (Dkt. 122), provides the following Objections to Plaintiffs' Amended *Monell* Interrogatories:

**DEFINITIONS AND INSTRUCTIONS**

Notwithstanding the specific definitions below, each word, term, or phrase used in these Requests should be given their most expansive and inclusive meaning. As used in these Requests, the following terms are to be interpreted in accordance with these definitions:

1. "Communication" as used herein means any statement, inquiry, discussion, conversation, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, e-mail, text message, note, advertisement, or any other form of communication, whether oral or written.

2.      "Document" as used herein means any writing, "Communication" (as defined above), or other medium, including, but not limited to, electronic, magnetic, or optical media, by which information is transmitted or recorded. The term also includes all drafts, amendments, modifications, changes or side correspondence, notes, or non-identical copies such as those that include marginalia or other printed, stamped or handwritten revisions or notations.

3.      "Identify" as used herein <u>when referring to a Communication</u> means to provide as much of the following information as is available to Defendant:

     a.  The manner or type of the Communication;

     b.  The date of and parties to the Communication;

     c.  Where the Communication was made or took place;

     d.  The substance of the Communication; and

     e.  Identify all Documents describing or memorializing the Communication.

4.      "Identify" as used herein <u>when referring to a Document</u> means to provide as much of the following information as is available to Defendant:

     a.  Its author(s), sender(s), addressee(s) and recipient(s)

     b.  Its date;

     c.  Title of Document;

     d.  Type of Document;

     e.  Its subject matter;

     f.  The number of pages;

     g.  Any attachments or appendices; and

     h.  The Person(s) who is its custodian.

5. "Identify" as used herein <u>when referring to a Person</u> means the Person's:

    a. Full legal name;

    b. Job title;

    c. Job description;

    d. Current or last known address of employer;

    e. Current or last known address;

    f. Current or last known telephone number; and

    g. Current or last known e-mail address.

6. "Individual" or "Person" as used herein means any natural or artificial person, including business entities and other legal entities.

7. "You" or "your" refers to refers to Defendant City of Chicago, and any its constituent agencies, including the Chicago Police Department, and any agencies over which the City of Chicago has control.

8. "Relating" as used herein means in any way referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part.

9. "Investigatory Interview" as used herein means any discussions, statements, or questioning between any Defendant or its agent(s) and Plaintiff, any witness, any potential suspect, or any person relating to the investigation into the murders of Hector Reyes and Jimmy Cruz.

10. "This Matter" as used herein means the investigation, prosecution, and proceedings related to the murder of Hector Reyes and Jimmy Cruz and/or the arrest, investigation, prosecution, indictment, conviction, and incarceration of Marilyn Mulero, Madeline Mendoza, and Jacqueline Montanez.

## INTERROGATORIES

1.      For any training provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to conducting witness and suspect interviews and/or interrogations please: (i) state the name of the training; (ii) describe the subject matter of the training; (iii) state the approximate length of training; (iv) state how the training was presented (*e.g.* in person, streaming, through a module); and (v) Identify any documents associated with the training.

**OBJECTION:**  **Defendant City objects to this interrogatory as overly broad and unduly burdensome, and not proportional to the needs of the case.**

**Overly broad and unduly burdensome: The time period specified in this interrogatory is excessive.  The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992.  In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order any more than four years prior to the underlying case as the relevant time frame.  During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time-period because 1976 was when Defendant Guevara became a police officer.  Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer.  *See, Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").**

**The City also objects that this interrogatory is overbroad and unduly burdensome based on the definition of "relating," above.  The subject matter of this interrogatory is decades old. Thus, requiring the City to search for additional responsive information for anything "referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part" is excessive.**

**Further, this interrogatory does not appear to materially differ from Plaintiffs' Number 3 of Plaintiffs' Amended *Monell* Request for Production of Documents or Plaintiffs' Rule 30(b)(6) notice requesting testimony for the same topics.   The City stated in its Objections to Plaintiffs' Request for Production Number 3 that, if the relevant time period is appropriately narrowed, it will produce training materials that it has been able to locate related to interviews and interrogations.  The City has also offered to designate Rule 30(b)(6) testimony on the topics of detective training related to witness and suspect interviews and interrogations from other recent cases involving Defendant Guevara where the plaintiffs raised substantially the same *Monell* claims as Plaintiffs do here, and Plaintiff Mendoza's counsel agreed to accept those designations in the consolidated cases of *Martinez v. Guevara et al/Tinajero v. Guevara et al/Kelly v. Guevara et al*, where Mendoza's counsel represents one of the plaintiffs.  Plaintiffs have not provided a reason why the designated testimony is**

insufficient in this case. Accordingly, no other discovery related to this topic of this interrogatory is warranted.

**Not proportional to the needs of the case:** This interrogatory is not proportional to the needs of the case because if refers to "CPD trainees" and "officers," in general, yet Plaintiffs' *Monell* theories require Plaintiffs to establish a causal connection with the policies at issue and the alleged misconduct in this case. *See Mulero*, Dkt. 1, ¶¶187-89; *Mendoza*, Dkt. 1, ¶49. Because the Defendant Officers in this case were detectives when they investigated the homicides for which Plaintiffs were convicted, only training for detectives is relevant to Plaintiffs' *Monell* claim. Indeed, conducting a homicide investigation is a unique responsibility assigned to detectives, not "CPD trainees" or "officers" in general.

2. For any training provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to interrogating and interviewing jailhouse informants please: (i) state the name of the training; (ii) describe the subject matter of the training; (iii) state the approximate length of training; (iv) state how the training was presented (*e.g.* in person, streaming, through a module); and (v) Identify any documents associated with the training.

**OBJECTION:** Defendant City objects to this interrogatory as vague and ambiguous, overly broad and unduly burdensome, and not proportional to the needs of the case.

**Vague and ambiguous:** The term "jailhouse informant" is colloquial, and Plaintiffs do not define it. Plaintiff may intend to refer broadly to the situation where someone who is incarcerated provides information about a crime; however, that situation could arise under numerous circumstances. For instance, incarcerated individuals may come to learn information relating to a crime simply because they witnessed something while incarcerated. They may then provide that information in a witness statement. But that likely does not make them a "jailhouse informant." Nor is it clear if by using the word "informant," Plaintiffs intend this topic to pertain to confidential sources, like a situation where someone is registered as a cooperating individual. Ultimately, even if the individual is incarcerated, someone who provides information about a crime is a witness, and, therefore, this interrogatory is duplicative of Interrogatory Number 1.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years before the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See, Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional

behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

The City also objects that this interrogatory is overbroad and unduly burdensome based on the definition of "relating" above. The subject matter of this interrogatory is decades old. Requiring the City to search for additional responsive information for anything "referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part" is excessive.

Further, this interrogatory does not appear to materially differ from Request Number 4 of Plaintiffs' Amended *Monell* Request for Production of Documents or Plaintiffs' Rule 30(b)(6) notice requesting testimony for the same topics. The City stated in its Objections to Plaintiffs' Request for Production Number 4 that, if the relevant time period is appropriately narrowed, the City will produce training materials that it has been able to locate related to detectives' interviews and interrogations. And the City has offered to designate Rule 30(b)(6) testimony on the topics of detective training related to interviews and interrogations. Accordingly, no other discovery related to this topic of this interrogatory is warranted.

<u>Not proportional to the needs of the case:</u> Additionally, this interrogatory is not proportional to the needs of the case because it refers to "CPD trainees" and "officers," in general, yet the Defendant Officers were detectives when they investigated the Reyes and Cruz homicides for which Plaintiffs were convicted. Because Plaintiffs' *Monell* theories require Plaintiffs to establish a causal connection with the policies at issue and the alleged misconduct in this case, only training for detectives is relevant to Plaintiffs' *Monell* claim. *See Mulero*, Dkt. 1, ¶¶. 187-89; *Mendoza*, Dkt. 1, ¶49. Indeed, conducting a homicide investigation is a unique responsibility assigned to detectives, not "CPD trainees" or "officers" in general.

      3.     For any training provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to interrogating and interviewing witnesses in custody about matters unrelated to the allegations against the witnesses please: (i) state the name of the training; (ii) describe the subject matter of the training; (iii) state the approximate length of training; (iv) state how the training was presented (*e.g.* in person, streaming, through a module); and (v) Identify any documents associated with the training.

<u>OBJECTION:</u> Defendant City objects to this interrogatory as vague and ambiguous, overly broad and unduly burdensome, and not proportional to the needs of the case.

<u>Vague and ambiguous:</u> Plaintiffs do not define what they mean by "interrogating and interviewing witnesses in custody about matters unrelated to the allegations against the witness." The City presumes the intended topic of this interrogatory is a situation like that in this case involving Ivette Rodriguez, where, after being arrested on a narcotics charge, Rodriguez provided information about the Reyes and Cruz murders. Nevertheless, the

phrasing of this interrogatory is confusing, so it is unclear what is intended. More to the point, even if the interviewed individual is in custody or provides information "about matters unrelated to the allegations against the witness," if the individual is providing information about a crime, that person is still a witness, and, therefore, this interrogatory is duplicative of Interrogatory Number 1.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive.  The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame.  During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time-period because 1976 was when Defendant Guevara became a police officer.  Plaintiffs' focus on Defendant Guevara is misguided.  For their *Monell* claims, Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer.  *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

The City also objects that this interrogatory is overbroad and unduly burdensome based on the definition of "relating" above.  The subject matter of this interrogatory is decades old.  Requiring the City to search for additional responsive information for anything "referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part" is excessive.

This interrogatory does not appear to materially differ from Request Number 5 of Plaintiffs' Amended *Monell* Request for Production of Documents or Plaintiffs' Rule 30(b)(6) notice requesting testimony for the same topics.  The City stated in its Objections to Plaintiffs' Request for Production Number 5 that if the relevant time-period is appropriately narrowed, the City will produce training materials that it has been able to locate related to detectives' interviews and interrogations.  And the City has offered to designate Rule 30(b)(6) testimony as to the topics of detective training related to interviews and interrogations.  Accordingly, no other discovery related to this topic of this interrogatory is warranted.

**Not proportional to the needs of the case:** Additionally, this interrogatory is not proportional to the needs of the case because it refers to "CPD trainees" and "officers," in general, yet the Defendant Officers were detectives when they investigated the Reyes and Cruz homicides for which Plaintiffs were convicted.  Because Plaintiffs' *Monell* theories require Plaintiffs to establish a causal connection with the policies at issue and the alleged misconduct in this case, only training pertaining to detectives is relevant to Plaintiffs' *Monell* claim.  *See Mulero*, Dkt. 1, ¶¶187-89; *Mendoza*, Dkt. 1, ¶49.  Indeed, conducting a homicide investigation is a unique responsibility assigned to detectives, not "CPD trainees" or "officers" in general.

      4.     For any training provided to CPD trainees, officers, and detectives between 1976

through 1992, relating to identification procedures for witnesses (such as show-ups, line-ups, photo

arrays, and single-photo identification procedures) please: (i) state the name of the training; (ii) describe the subject matter of the training; (iii) state the approximate length of training; (iv) state how the training was presented (*e.g.* in person, streaming, through a module); and (v) Identify any documents associated with the training.

**OBJECTION:** **Defendant City objects to this interrogatory as overly broad and unduly burdensome, and not proportional to the needs of the case.**

**Overly broad and unduly burdensome:** **The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi*., 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").**

**The City also objects that this interrogatory is overbroad and unduly burdensome based on the definition of "relating" above. The subject matter of this interrogatory is decades old. Requiring the City to search for additional responsive information for anything "referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part" is excessive.**

**Further, this interrogatory does not appear to materially differ from Request Number 6 of Plaintiffs' Amended *Monell* Request for Production of Documents or Plaintiffs' Rule 30(b)(6) notice requesting testimony for the same topics. The City stated in its Objections to Plaintiffs' Request for Production Number 6 that if the relevant time period is appropriately narrowed, the City will produce training materials that it has been able to locate related to detective training on eyewitness identification procedures. And the City has offered to designate Rule 30(b)(6) testimony as to the topics of detective training related to identification procedures from other recent cases involving Defendant Guevara where the plaintiffs raised substantially the same *Monell* claims as Plaintiffs do here, and Plaintiff Mendoza's counsel agreed to accept those designations in the consolidated cases of *Martinez v. Guevara et al/Tinajero v. Guevara et al/Kelly v. Guevara et al*, where Mendoza's counsel represents one of the plaintiffs. Plaintiffs have not provided a reason why the designated testimony is insufficient in this case. Accordingly, no other discovery related to this topic of this interrogatory is warranted.**

**Not proportional to the needs of the case:** Additionally, this interrogatory is not proportional to the needs of the case because it refers to "CPD trainees" and "officers," in general, yet the Defendant Officers were detectives when they investigated the Reyes and Cruz homicides for which Plaintiffs were convicted. Because Plaintiffs' *Monell* theories require Plaintiffs to establish a causal connection with the policies at issue and the alleged misconduct in this case, only training for detectives is relevant to Plaintiffs' *Monell* claims. *See Mulero*, Dkt. 1, ¶¶187-89; *Mendoza*, Dkt. 1, ¶49. Indeed, conducting a homicide investigation is a unique responsibility assigned to detectives, not "CPD trainees" or "officers" in general.

5. For any training provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to the documentation and preservation of information learned during a homicide investigation please: (i) state the name of the training; (ii) describe the subject matter of the training; (iii) state the approximate length of training; (iv) state how the training was presented (*e.g.* in person, streaming, through a module); and (v) Identify any documents associated with the training.

**OBJECTION:** Defendant City objects to this interrogatory as overly broad and unduly burdensome, and not proportional to the needs of the case.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

The City also objects that this interrogatory is overbroad and unduly burdensome based on the definition of "relating" above. The subject matter of this interrogatory is decades old. Requiring the City to search for additional responsive information for anything "referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part" is excessive.

Further, this interrogatory does not appear to materially differ from Request Number 7 of Plaintiffs' Amended *Monell* Request for Production of Documents or Plaintiffs' Rule 30(b)(6) notice requesting testimony for the same topics. The City stated in its Objections to

**Plaintiffs' Request for Production Number 7 that if the relevant time period is appropriately narrowed, the City will produce training materials that it has been able to locate related to training provided to detectives about documenting their investigation. And the City has offered to designate Rule 30(b)(6) testimony as to the topics of training provided to detectives about documenting their investigation from other recent cases involving Defendant Guevara where the plaintiffs raised substantially the same *Monell* claims as Plaintiffs do here, and Plaintiff Mendoza's counsel agreed to accept those designations in the consolidated cases of *Martinez v. Guevara et al/Tinajero v. Guevara et al/Kelly v. Guevara et al*, where Mendoza's counsel represents one of the plaintiffs. Plaintiffs have not provided a reason why the designated testimony is insufficient in this case. No other discovery related to this topic of this interrogatory is warranted.**

**Not proportional to the needs of the case: Additionally, this interrogatory is not proportional to the needs of the case because it refers to "CPD trainees" and "officers," in general, yet the Defendant Officers were detectives when they investigated the Reyes and Cruz homicides for which Plaintiffs were convicted. Because Plaintiffs' *Monell* theories require Plaintiffs to establish a causal connection with the policies at issue and the alleged misconduct in this case, only training for detectives is relevant to Plaintiffs' *Monell* claims. *See Mulero*, Dkt. 1, ¶¶. 187-89; *Mendoza*, Dkt. 1, ¶49. Indeed, conducting a homicide investigation is a unique responsibility assigned to detectives, not "CPD trainees" or "officers" in general.**

6. For any training provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to obligations under *Brady v. Maryland*, please: (i) state the name of the training; (ii) describe the subject matter of the training; (iii) state the approximate length of training; (iv) state how the training was presented (*e.g.* in person, streaming, through a module); and (v) Identify any documents associated with the training.

**OBJECTION: Defendant City objects to this interrogatory as overly broad and unduly burdensome, and not proportional to the needs of the case.**

**Overly broad and unduly burdensome: The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See, Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").**

10

**The City also objects that this interrogatory is overbroad and unduly burdensome based on the definition of "relating," above. The subject matter of this interrogatory is decades old. Requiring the City to search for additional responsive information for anything "referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part" is excessive.**

**Further, this interrogatory does not appear to materially differ from Request Number 8 of Plaintiffs' Amended *Monell* Request for Production of Documents or Plaintiffs' Rule 30(b)(6) notice requesting testimony for the same topics. The City stated in its Objections to Plaintiffs' Request for Production Number 8 that if the relevant time period is appropriately narrowed, the City will produce materials related to training provided to detectives about their obligations pursuant to *Brady v. Maryland*. And the City has offered to designate Rule 30(b)(6) testimony as to the topics of training provided to detectives about their obligations pursuant to *Brady v. Maryland* from other recent cases involving Defendant Guevara where the plaintiffs raised substantially the same *Monell* claims as Plaintiffs do here, and Plaintiff Mendoza's counsel agreed to accept those designations in the consolidated cases of *Martinez v. Guevara et al/Tinajero v. Guevara et al/Kelly v. Guevara et al*, where Mendoza's counsel represents one of the plaintiffs. Plaintiffs have not provided a reason why the designated testimony is insufficient in this case. Accordingly, no other discovery related to this topic of this interrogatory is warranted.**

**<u>Not proportional to the needs of the case:</u> Additionally, this interrogatory is not proportional to the needs of the case because it refers to "CPD trainees" and "officers," in general, yet the Defendant Officers were detectives when they investigated the Reyes and Cruz homicides for which Plaintiffs were convicted. Because Plaintiffs' *Monell* theories require Plaintiffs to establish a causal connection with the policies at issue and the alleged misconduct in this case, only training for detectives is relevant to Plaintiffs' *Monell* claims. *See Mulero*, Dkt. 1, ¶¶. 187-89; *Mendoza*, Dkt. 1, ¶49. Indeed, conducting a homicide investigation is a unique responsibility assigned to detectives, not "CPD trainees" or "officers" in general.**

7.     Identify all CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to conducting witness and suspect interviews and/or interrogations.

**<u>OBJECTION:</u> Defendant City objects to this interrogatory as overly broad and unduly burdensome and not proportional to the needs of the case.**

**<u>Overly broad and unduly burdensome:</u> The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided.**

Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

<u>Not proportional to the needs of the case:</u> This interrogatory is duplicative of Plaintiffs' Request for Production Number 9. Because Plaintiffs have already requested the written directives on the topic, and, if the time limit is appropriately narrowed, the City has agreed to produce those directives related to suspect interrogations and witness interviews, answering this interrogatory is unnecessary. The City objects to the definition of "identify" above, which demands the City provide extraneous details about documents responsive to this request that add no evidentiary value, when the documents themselves should be sufficient. Indeed, Plaintiffs do not even take issue with the City's written directives, instead, making accusations about "*de facto* polices." *See Mulero*, Dkt. 1, ¶¶ 170-198; *Mendoza*, Dkt. 1, ¶49.

        8.    Identify all CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to interrogating and interviewing jailhouse informants.

<u>OBJECTION:</u> Defendant City objects to this interrogatory as vague and ambiguous and overly broad and unduly burdensome and not proportional to the needs of the case.

<u>Vague and ambiguous</u>: Plaintiffs do not define the term "jailhouse informant." The City fails to see how this interrogatory is materially different from Interrogatory Number 7.

<u>Overly broad and unduly burdensome:</u> The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

<u>Not proportional to the needs of the case:</u> This interrogatory is duplicative of Plaintiffs' Request for Production Number 10. Because Plaintiffs have already requested the written directives on this topic, and, if the time limit is appropriately narrowed, the City has agreed to produce those directives related to witness interviews, answering this interrogatory is unnecessary. The City objects to the definition of "identify" above, which demands the City provide extraneous details about documents responsive to this request that add no

evidentiary value, when the documents themselves should be sufficient. Indeed, Plaintiffs do not even take issue with the City's written directives, instead, making accusations about "*de facto* polices."

9.      Identify all CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to interrogating and interviewing witnesses in custody about matters unrelated to the allegations against the witnesses.

**OBJECTION:** Defendant City objects to this interrogatory as vague and ambiguous and overly broad and unduly burdensome and not proportional to the needs of the case.

**Vague and ambiguous**: Plaintiffs do not define the phrase "witnesses in custody about matters unrelated to the allegations against the witnesses." The City fails to see how this interrogatory is materially different from Interrogatory Number 7.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

**Not proportional to the needs of the case:** This interrogatory is duplicative of Plaintiffs' Request for Production Number 11. Because Plaintiffs have already requested the written directives on this topic, and, if the time limit is appropriately narrowed, the City has agreed to produce those directives related to witness interviews, answering this interrogatory is unnecessary. The City objects to the definition of "identify" above, which demands that the City provide extraneous details about documents responsive to this request that add no evidentiary value, when the documents themselves should be sufficient. Indeed, Plaintiffs do not even take issue with the City's written directives, instead, making accusations about "*de facto* polices." *See Mulero*, Dkt. 1, ¶¶ 170-198; *Mendoza*, Dkt. 1, ¶49.

10.      Identify all CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to identification procedures for witnesses (such as show-ups, line-ups, photo arrays, and single-photo identification procedures).

**OBJECTION:** Defendant City objects to this interrogatory as overly broad and unduly burdensome and not proportional to the needs of the case.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

**Not proportional to the needs of the case:** This interrogatory is duplicative of Plaintiffs' Request for Production Number 12. Because Plaintiffs have already requested the written directives on this topic, and, if the time limit is appropriately narrowed, the City has agreed to produce those directives relating to eyewitness identification procedures, answering this interrogatory is unnecessary. The City objects to the definition of "identify" above, which demands that the City provide extraneous details about documents responsive to this request that add no evidentiary value, when the documents themselves should be sufficient. Indeed, Plaintiffs do not even take issue with the City's written directives, instead, making accusations about "*de facto* polices." *See Mulero*, Dkt. 1, ¶¶ 170-198; *Mendoza*, Dkt. 1, ¶49.

      11.    Identify all CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to the documentation and preservation of information learned during a homicide investigation.

**OBJECTION:** Defendant City objects to this interrogatory as overly broad and unduly burdensome and not proportional to the needs of the case.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional

behavior" and requires "a widespread practice that permeates a critical mass of an institutional body," not "misbehavior by one or a group of officials").

**Not proportional to the needs of the case:** This interrogatory is duplicative of Plaintiffs' Request for Production Number 13. Because Plaintiffs have already requested the written directives on this topic, and, if the time limit is appropriately narrowed, the City has agreed to produce those directives related to detectives documenting and preserving information learned during a homicide investigation, answering this interrogatory is unnecessary. The City objects to the definition of "identify" above, which demands the City provide extraneous details about documents responsive to this request that add no evidentiary value, when the documents themselves should be sufficient. Indeed, Plaintiffs do not even take issue with the City's written directives, instead, making accusations about "*de facto* polices." *See Mulero*, Dkt. 1, ¶¶ 170-198; *Mendoza*, Dkt. 1, ¶49.

12. Identify all CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to obligations under *Brady v. Maryland*.

**OBJECTION:** Defendant City objects to this interrogatory as overly broad and unduly burdensome and not proportional to the needs of the case.

**Overly broad and unduly burdensome:** The time period specified in this interrogatory is excessive. The City agrees that the relevant time period should end in 1992, when the murders for which Plaintiffs were convicted were investigated, but it should not extend to 16 years prior to 1992. In deciding the relevant *Monell* discovery period in other cases like these, Courts often do not order more than four years prior to the underlying case as the relevant time frame. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. Plaintiffs' focus on Defendant Guevara for their *Monell* claims is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *See*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

**Not proportional to the needs of the case:** This interrogatory is duplicative of Plaintiffs' Request for Production Number 14. Because Plaintiffs have already requested the written directives on this topic, and, if the time limit is appropriately narrowed, the City has agreed to produce those directives regarding detectives' *Brady* obligations, answering this interrogatory is unnecessary. The City objects to the definition of "identify" above, which demands the City provide extraneous details about documents responsive to this request that add no evidentiary value, when the documents themselves should be sufficient. Indeed, Plaintiffs do not even take issue with the City's written directives, instead, making accusations about "*de facto* polices." *See Mulero*, Dkt. 1, ¶¶ 170-198; *Mendoza*, Dkt. 1, ¶49.

13. State the approximate date that the CPD and/or City of Chicago became aware of the

nature of the allegations raised by the plaintiffs in the below identified cases:

| Request subparagraph | Plaintiff | Jurisdiction | Case No. |
|---|---|---|---|
| a | Alfredo Gonzalez | USDC NDIL | 1:22-cv- |
| b | Anthony Jakes | USDC NDIL | 1:19-cv- |
| c | Ariel Gomez | USDC NDIL | 1:18-cv- |
| d | Armando Serrano | USDC NDIL | 1:17-cv- |
| e | Arnold Day | USDC NDIL | 1:19-cv- |
| f | Arthur Brown | USDC NDIL | 1:18-cv- |
| g | Arturo DeLeon- | USDC NDIL | 1:18-cv- |
| h | Christopher Abernathy | USDC NDIL | 1:16-cv-02128 |
| i | Daniel Andersen | USDC NDIL | 1:16-cv- |
| j | Daniel Rodriguez | USDC NDIL | 1:22-cv- |
| k | David Colon / David Lugo | USDC NDIL | 1:23-cv-01738 |
| l | David Fauntleroy | USDC NDIL | 1:11-cv- |
| m | David Gecht | USDC NDIL | 1:23-cv- |
| n | Demetrius Johnson | USDC NDIL | 1:20-cv- |
| o | Demond Weston | USDC NDIL | 1:20-CV-06189 |
| p | Edwin Davilla | USDC NDIL | 1:23-cv- |
| q | Eruby Abrego | USDC NDIL | 1:23-cv- |
| r | Francisco Benitez | USDC NDIL | 1:23-cv- |
| s | Francisco Nanez | USDC NDIL | 1:23-cv- |
| t | Gabriel Solache | USDC NDIL | 1:18-cv- |
| u | Gamalier Rivera | USDC NDIL | 1:23-cv- |
| v | Gerardo Iglesias | USDC NDIL | 1:19-cv- |
| w | Jacques Rivera | USDC NDIL | 1:12-cv- |
| x | Jaime Rios | USDC NDIL | 1:22-cv- |
| y | James Allen | USDC NDIL | 1:22-cv- |
| z | James Marshall | USDC NDIL | 1:21-cv- |
| aa | Jeremiah Cain | USDC NDIL | 1:23-cv- |
| bb | John Galvan | USDC NDIL | 1:23-cv- |
| cc | John Martinez | USDC NDIL | 1:23-cv- |
| dd | Johnny Flores | USDC NDIL | 1:23-cv- |
| ee | Jose Cruz | USDC NDIL | 1:23-cv- |
| ff | Jose Juan Maysonet, Jr. | USDC NDIL | 1:18-cv-02342 |
| gg | Jose Montanez | USDC NDIL | 1:17-cv- |
| hh | Juan Hernandez; Rosendo Hernandez | USDC NDIL | 1:23-cv-01737 |
| ii | Juan Johnson | USDC NDIL | 1:05-cv- |
| 11 | Keith Walker | USDC NDIL | 1:21-cv- |
| kk | Lafonso Rollins | USDC NDIL | 1:05-cv- |

| ll | Lee Harris | USDC NDIL | 1:23-cv- |
|---|---|---|---|
| mm | Nicholas Escamilla | USDC NDIL | 1:24-cv- |
| nn | Reynaldo Munoz | USDC NDIL | 1:23-cv- |
| oo | Ricardo Rodriguez | USDC NDIL | 1:18-cv- |
| pp | Richard Kwil | USDC NDIL | 1:23-cv- |
| qq | Robert Bouto | USDC NDIL | 1:19-cv- |
| rr | Roberto Almodovar, Jr. | USDC NDIL | 1:18-cv-02241 |
| ss | Thomas Sierra | USDC NDIL | 1:18-cv- |
| tt | Tyrone Reyna | USDC NDIL | 1:24-cv- |
| uu | Victor Safforld f/k/a Cortez Brown | Cook County, Illinois | 90CR2399701 |
| vv | William Negron | USDC NDIL | 1:18-cv-02701 |
| ww | Victor Vera | Cook County, Illinois | 89CR1103904 |

**OBJECTION:** Defendant City objects to this interrogatory as vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case.

**Vague and ambiguous:** The City presumes the purpose of this interrogatory is to obtain information to establish the element of notice for Plaintiffs' *Monell* claims. But that is not made clear by the use of the terms "CPD and/or the City of Chicago," as well as "aware." Nor can the City answer this interrogatory without knowing what specific "allegations raised by the plaintiffs in the below identified cases." As Plaintiffs likely know, or should know, the civil complaints filed in cases like these are hundreds of paragraphs long. It is impossible for the City to speculate as to which allegations Plaintiffs are referring.

**Overly broad and unduly burdensome:** This request is overly broad and unduly burdensome based on the number of cases included, the fact that nearly half involve criminal investigations occurring after 1992, are remote in time, or, for the case of *Abernathy*, do not even involve the City of Chicago.

**Not proportional to the needs of the case:** Because nearly half of the criminal investigations in this list occurred after 1992, it is apparent that Plaintiff did not conduct an appropriate investigation before including them here. Indeed, whether or not "CPD and/or the City of Chicago" was "aware" of "allegations raised by the plaintiffs in the below cases," for criminal investigations occurring after 1992 is not relevant to establishing a *Monell* claim in this case. Further, as explained above, Plaintiffs misguidedly focus their list on collecting lawsuits against Defendant Guevara, rather than establishing a widespread practice. Also, if Plaintiffs' question is merely whether the individuals identified in this list made complaints to the Chicago Police Department, and when, the City has already produced the complaint register (CR) files for the Defendant Officers. And the City objects to conducting a search for the non-Guevara cases in this list because three of the 15 involved criminal investigations occurring after 1992, two were many years before, and one did not involve the City of Chicago

17

**at all; assuming the remaining nine made complaints to the Chicago Police Department before 1992, that is insufficient to establish a widespread practice.**

14.     State whether any CPD officers were investigated by CPD, the City of Chicago, or any related entities, in connection with the allegations raised by the plaintiffs in the cases identified below. If the answer is in the affirmative, Identify any Documents or materials related to any such investigation.

| Request subparagraph | Plaintiff | Jurisdiction | Case No. |
|---|---|---|---|
| a | Alfredo Gonzalez | USDC NDIL | 1:22-cv-06496 |
| b | Anthony Jakes | USDC NDIL | 1:19-cv-02204 |
| c | Ariel Gomez | USDC NDIL | 1:18-cv-03335 |
| d | Armando Serrano | USDC NDIL | 1:17-cv-02869 |
| e | Arnold Day | USDC NDIL | 1:19-cv-07286 |
| f | Arthur Brown | USDC NDIL | 1:18-cv-07064 |
| g | Arturo DeLeon-Reyes | USDC NDIL | 1:18-cv-01028 |
| h | Christopher Abernathy | USDC NDIL | 1:16-cv-02128 |
| i | Daniel Andersen | USDC NDIL | 1:16-cv-01963 |
| j | Daniel Rodriguez | USDC NDIL | 1:22-cv-06141 |
| k | David Colon / David Lugo | USDC NDIL | 1:23-cv-01738 |
| l | David Fauntleroy | USDC NDIL | 1:11-cv-00118 |
| m | David Gecht | USDC NDIL | 1:23-cv-01742 |
| n | Demetrius Johnson | USDC NDIL | 1:20-cv-04156 |
| o | Demond Weston | USDC NDIL | 1:20-CV-06189 |
| p | Edwin Davilla | USDC NDIL | 1:23-cv-01739 |
| q | Eruby Abrego | USDC NDIL | 1:23-cv-01740 |
| r | Francisco Benitez | USDC NDIL | 1:23-cv-16896 |
| s | Francisco Nanez | USDC NDIL | 1:23-cv-03162 |
| t | Gabriel Solache | USDC NDIL | 1:18-cv-02312 |
| u | Gamalier Rivera | USDC NDIL | 1:23-cv-01743 |
| v | Gerardo Iglesias | USDC NDIL | 1:19-cv-06508 |
| w | Jacques Rivera | USDC NDIL | 1:12-cv-04428 |
| x | Jaime Rios | USDC NDIL | 1:22-cv-03973 |
| y | James Allen | USDC NDIL | 1:22-cv-03044 |
| z | James Marshall | USDC NDIL | 1:21-cv-00694 |
| aa | Jeremiah Cain | USDC NDIL | 1:23-cv-14282 |
| bb | John Galvan | USDC NDIL | 1:23-cv-03158 |
| cc | John Martinez | USDC NDIL | 1:23-cv-01741 |

| dd | Johnny Flores | USDC NDIL | 1:23-cv-01736 |
|---|---|---|---|
| ee | Jose Cruz | USDC NDIL | 1:23-cv-04268 |
| ff | Jose Juan Maysonet, Jr. | USDC NDIL | 1:18-cv-02342 |
| gg | Jose Montanez | USDC NDIL | 1:17-cv-04560 |
| hh | Juan Hernandez; Rosendo Hernandez | USDC NDIL | 1:23-cv-01737 |
| ii | Juan Johnson | USDC NDIL | 1:05-cv-01042 |
| 11 | Keith Walker | USDC NDIL | 1:21-cv-04231 |
| kk | Lafonso Rollins | USDC NDIL | 1:05-cv-02532 |
| ll | Lee Harris | USDC NDIL | 1:23-cv-14220 |
| mm | Nicholas Escamilla | USDC NDIL | 1:24-cv-11090 |
| nn | Reynaldo Munoz | USDC NDIL | 1:23-cv-03210 |
| oo | Ricardo Rodriguez | USDC NDIL | 1:18-cv-07951 |
| pp | Richard Kwil | USDC NDIL | 1:23-cv-04279 |
| qq | Robert Bouto | USDC NDIL | 1:19-cv-02441 |
| rr | Roberto Almodovar, Jr. | USDC NDIL | 1:18-cv-02341 |
| ss | Thomas Sierra | USDC NDIL | 1:18-cv-03029 |
| tt | Tyrone Reyna | USDC NDIL | 1:24-cv-10815 |
| uu | Victor Safford f/k/a Cortez Brown | Cook County, Illinois | 90CR2399701 |
| vv | William Negron | USDC NDIL | 1:18-cv-02701 |
| ww | Victor Vera | Cook County, Illinois | 89CR1103904 |

**OBJECTION**: Defendant City objects to this interrogatory as vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case.

**Vague and ambiguous**: The City does not know what Plaintiffs mean by the phrase "any other entities." Nor is it clear what Plaintiffs mean by "investigated." For instance, it is not clear if Plaintiffs are requesting information as to whether any CR investigation was conducted with respect to any of these individuals, or if Plaintiffs are referring to some "investigation" undertaken at the time of the civil complaints were filed. As with the interrogatory above, the City also cannot guess as to what specific "allegations raised by the plaintiffs in the below identified cases." As Plaintiffs likely know, or should know, the civil complaints filed in cases like these are hundreds of paragraphs long. It is impossible for the City to speculate as to which allegations Plaintiffs are referring. Additionally, it is not clear whether Plaintiffs intend for this request to include the investigation conducted by Sidley & Austin. The City of Chicago Department of Law engaged Scott Lassar and Sidley & Austin to conduct a review and provide advice regarding certain cases handled by former detective Guevara. That investigation concluded in 2015. The communications regarding the investigation and the results of the investigation are privileged pursuant to the work-product and attorney-client privilege, and, as stated in previous discovery responses, the City has

withheld the privileged documents. Nevertheless, the City has already produced the non-privileged documents related to the investigation at RFC Lassar 5646-130211.

**Overly broad and unduly burdensome:** This request is overly broad and unduly burdensome based on the number of cases included, the fact that nearly half involve criminal investigations occurring after 1992, are remote in time, or, for the case of *Abernathy*, do not even involve the City of Chicago.

**Not proportional to the needs of the case:** The premise of this interrogatory is flawed because it seems to presume that the identified individuals in this list made any contemporaneous complaints to the Chicago Police Department about any officer whom they allege committed misconduct in their case. Also, because nearly half of the criminal investigations in this list occurred after 1992, it is apparent that Plaintiffs did not conduct an appropriate investigation to determine whether it was even possible for these individuals to have made "allegations" related to these cases before 1992. Further, as explained above, Plaintiffs misguidedly focus their list on collecting lawsuits against Defendant Guevara, rather than establishing a widespread practice. Further, if Plaintiffs' question is merely whether the individuals identified in this list made complaints to the Chicago Police Department, and what the resulting investigation was, the City has already produced CR files for the Defendant Officers. The City objects to conducting an investigation into whether any of the plaintiffs in the 15 non-Guevara cases filed contemporaneous complaints with the Chicago Police Department because three of them occurred after 1992, two are many years before 1992, and one does not relate to the City of Chicago. That leaves only nine non-Guevara cases. Assuming those nine all made complaints with the Chicago Police Department prior to 1992, that is insufficient to establish a widespread practice.

15. State whether any CPD officers were disciplined by CPD, the City of Chicago, or any related entities, in connection with the allegations raised by the plaintiffs in the cases identified below. If the answer is in the affirmative, describe the nature of the discipline.

| Request subparagraph | Plaintiff | Jurisdiction | Case No. |
|---|---|---|---|
| a | Alfredo Gonzalez | USDC NDIL | 1:22-cv-06496 |
| b | Anthony Jakes | USDC NDIL | 1:19-cv-02204 |
| c | Ariel Gomez | USDC NDIL | 1:18-cv-03335 |
| d | Armando Serrano | USDC NDIL | 1:17-cv-02869 |
| e | Arnold Day | USDC NDIL | 1:19-cv-07286 |
| f | Arthur Brown | USDC NDIL | 1:18-cv-07064 |
| g | Arturo DeLeon-Reyes | USDC NDIL | 1:18-cv-01028 |
| h | Christopher Abernathy | USDC NDIL | 1:16-cv-02128 |
| i | Daniel Andersen | USDC NDIL | 1:16-cv-01963 |
| 1 | Daniel Rodriguez | USDC NDIL | 1:22-cv-06141 |
| k | David Colon / David Lugo | USDC NDIL | 1:23-cv-01738 |

| l | David Fauntleroy | USDC NDIL | 1:11-cv-00118 |
|---|---|---|---|
| m | David Gecht | USDC NDIL | 1:23-cv-01742 |
| n | Demetrius Johnson | USDC NDIL | 1:20-cv-04156 |
| o | Demond Weston | USDC NDIL | 1:20-CV-06189 |
| p | Edwin Davilla | USDC NDIL | 1:23-cv-01739 |
| q | Eruby Abrego | USDC NDIL | 1:23-cv-01740 |
| r | Francisco Benitez | USDC NDIL | 1:23-cv-16896 |
| s | Francisco Nanez | USDC NDIL | 1:23-cv-03162 |
| t | Gabriel Solache | USDC NDIL | 1:18-cv-02312 |
| u | Gamalier Rivera | USDC NDIL | 1:23-cv-01743 |
| v | Gerardo Iglesias | USDC NDIL | 1:19-cv-06508 |
| w | Jacques Rivera | USDC NDIL | 1:12-cv-04428 |
| x | Jaime Rios | USDC NDIL | 1:22-cv-03973 |
| y | James Allen | USDC NDIL | 1:22-cv-03044 |
| z | James Marshall | USDC NDIL | 1:21-cv-00694 |
| aa | Jeremiah Cain | USDC NDIL | 1:23-cv-14282 |
| bb | John Galvan | USDC NDIL | 1:23-cv-03158 |
| cc | John Martinez | USDC NDIL | 1:23-cv-01741 |
| dd | Johnny Flores | USDC NDIL | 1:23-cv-01736 |
| ee | Jose Cruz | USDC NDIL | 1:23-cv-04268 |
| ff | Jose Juan Maysonet, Jr. | USDC NDIL | 1:18-cv-02342 |
| gg | Jose Montanez | USDC NDIL | 1:17-cv-04560 |
| hh | Juan Hernandez; Rosendo Hernandez | USDC NDIL | 1:23-cv-01737 |
| ii | Juan Johnson | USDC NDIL | 1:05-cv-01042 |
| jj | Keith Walker | USDC NDIL | 1:21-cv-04231 |

| | | | |
|---|---|---|---|
| kk | Lafonso Rollins | USDC NDIL | 1:05-cv-02532 |
| ll | Lee Harris | USDC NDIL | 1:23-cv-14220 |
| mm | Nicholas Escamilla | USDC NDIL | 1:24-cv-11090 |
| nn | Reynaldo Munoz | USDC NDIL | 1:23-cv-03210 |
| oo | Ricardo Rodriguez | USDC NDIL | 1:18-cv-07951 |
| pp | Richard Kwil | USDC NDIL | 1:23-cv-04279 |
| qq | Robert Bouto | USDC NDIL | 1:19-cv-02441 |
| rr | Roberto Almodovar, Jr. | USDC NDIL | 1:18-cv-02341 |
| ss | Thomas Sierra | USDC NDIL | 1:18-cv-03029 |
| tt | Tyrone Reyna | USDC NDIL | 1:24-cv-10815 |
| uu | Victor Safford f/k/a Cortez Brown | Cook County, Illinois | 90CR2399701 |
| vv | William Negron | USDC NDIL | 1:18-cv-02701 |
| ww | Victor Vera | Cook County, Illinois | 89CR1103904 |

**OBJECTION**: Defendant City objects to this interrogatory as vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case.

**Vague and ambiguous:** The City does not know what Plaintiffs mean by the phrase "any other entities." Nor is it clear what Plaintiffs mean by "disciplined." For instance, it is not clear if Plaintiffs are requesting information as to whether any CR investigation was conducted with respect to any of these individuals. As with the interrogatory above, the City also cannot guess as to what specific "allegations raised by the plaintiffs in the below identified cases." As Plaintiffs likely know, or should know, the civil complaints filed in cases like these are hundreds of paragraphs long. It is impossible for the City to speculate as to which allegations Plaintiffs are referring.

**Overly broad and unduly burdensome:** This request is overly broad and unduly burdensome based on the number of cases included, the fact that nearly half involve criminal investigations occurring after 1992, are remote in time, or, for the case of *Abernathy*, do not even involve the City of Chicago.

**Not proportional to the needs of the case:** The premise of this interrogatory is flawed because it seems to presume that the identified individuals in this list made any contemporaneous complaints to the Chicago Police Department about any officer for whom they allege committed misconduct in their cases. Also, because nearly half of the criminal investigations in this list occurred after 1992, it is apparent that Plaintiffs did not conduct an appropriate investigation to determine whether it was even possible for these individuals to have made "allegations" related to these cases before 1992, such that there would have been anything for which to impose "discipline," should any "discipline" be warranted. Additionally, as explained above, Plaintiffs misguidedly focus their list on collecting lawsuits against Defendant Guevara, rather than establishing a widespread practice. Further, if Plaintiffs' question is merely whether the individuals identified in this list made complaints to the Chicago Police Department, and what the resulting investigation was, the City has already

**produced the complaint register (CR) files for the Defendant Officers. The City objects to conducting an investigation into whether any of the plaintiffs in the 15 non-Guevara cases filed contemporaneous complaints with the Chicago Police Department because three of them occurred after 1992, two are many years before 1992, and one does not relate to the City of Chicago. That leaves only nine non-Guevara cases. Assuming those nine all made complaints with the Chicago Police Department, that is insufficient to establish a widespread practice.**

Dated: May 30, 2025

Respectfully Submitted,

/s/ *Catherine M. Barber*
*Special Assistant Corporation Counsel*
*Attorney for the City of Chicago*

Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Lauren Ferrise
Andrew J. Grill
Rock Fusco & Connelly, LLC
333 W. Wacker, 19th Floor
Chicago, Illinois 60606
(312) 494-1000
cbarber@rfclaw.com