UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADELINE MENDOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-2441 |
| -vs- | ) | |
| | ) | Judge Durkin |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Judge Kim |
| Defendants. | ) | |
| MARILYN MULERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-4795 |
| -vs- | ) | |
| | ) | Judge Durkin |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Judge Kim |
| *Defendants.* | ) | |

**DEFENDANT CITY OF CHICAGO'S OBJECTIONS TO PLAINTIFFS' AMENDED
<u>*MONELL*</u> REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendant, City of Chicago ("City"), by and through its undersigned attorneys, in accordance with this Court's order (Dkt. 122), provides the following Objections to Plaintiffs' Amended *Monell* Requests for Production of Documents:

**DEFINITIONS**

1. "Communication" as used herein means any statement, inquiry, discussion, conversation, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, e-mail, text message, note, advertisement, or any other form of communication, whether oral or written.

2. "Document" as used herein means any writing, "Communication" (as defined above), or other medium, including, but not limited to, electronic, magnetic, or optical media, by which information is transmitted or recorded. The term also includes all drafts, amendments,

modifications, changes or side correspondence, notes, or non-identical copies such as those that include marginalia or other printed, stamped or handwritten revisions or notations.

3. "Identify" as used herein <u>when referring to a Communication</u> means to provide as much of the following information as is available to Defendant:

    a. The manner or type of the Communication;

    b. The date of and parties to the Communication;

    c. Where the Communication was made or took place;

    d. The substance of the Communication; and

    e. Identify all Documents describing or memorializing the Communication.

4. "Identify" as used herein <u>when referring to a Document</u> means to provide as much of the following information as is available to Defendant:

    a. Its author(s), sender(s), addressee(s) and recipient(s)

    b. Its date;

    c. Title of Document;

    d. Type of Document;

    e. Its subject matter;

    f. The number of pages;

    g. Any attachments or appendices; and

    h. The Person(s) who is its custodian.

5. "Identify" as used herein <u>when referring to a Person</u> means the Person's:

    a. Full legal name;

    b. Job title;

    c. Job description;

    d. Current or last known address of employer;

    e. Current or last known address;

    f. Current or last known telephone number; and

    g. Current or last known e-mail address.

6. "Individual" or "Person" as used herein means any natural or artificial person, including business entities and other legal entities.

7. "You" or "your" refers to refers to Defendant City of Chicago, and any its constituent agencies, including the Chicago Police Department, and any agencies over which the City of Chicago has control.

8. "Relating" as used herein means in any way referring to, containing, describing, constituting, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part.

9. "Investigatory Interview" as used herein means any discussions, statements, or questioning between any Defendant or its agent(s) and Plaintiff, any witness, any potential suspect, or any person relating to the investigation into the murders of Hector Reyes and Jimmy Cruz.

10. "This Matter" as used herein means the investigation, prosecution, and proceedings related to the murder of Hector Reyes and Jimmy Cruz and/or the arrest, investigation, prosecution, indictment, conviction, and incarceration of Marilyn Mulero, Madeline Mendoza, and Jacqueline Montanez.

## REQUESTS

1. All complaints, answers to complaints, answers to written discovery, party deposition transcripts, civil trial transcripts, criminal trial transcripts, final judgments, and certificates of innocence from the below identified cases:

| Request subparagraph | Plaintiff | Jurisdiction | Case No. |
|---|---|---|---|
| a | Alfredo Gonzalez | USDC NDIL | 1:22-cv-06496 |
| b | Anthony Jakes | USDC NDIL | 1:19-cv-02204 |
| c | Ariel Gomez | USDC NDIL | 1:18-cv-03335 |
| d | Armando Serrano | USDC NDIL | 1:17-cv-02869 |
| e | Arnold Day | USDC NDIL | 1:19-cv-07286 |
| f | Arthur Brown | USDC NDIL | 1:18-cv-07064 |
| g | Arturo DeLeon-Reyes | USDC NDIL | 1:18-cv-01028 |
| h | Christopher Abernathy | USDC NDIL | 1:16-cv-02128 |
| i | Daniel Andersen | USDC NDIL | 1:16-cv-01963 |
| j | Daniel Rodriguez | USDC NDIL | 1:22-cv-06141 |
| k | David Colon / David Lugo | USDC NDIL | 1:23-cv-01738 |
| l | David Fauntleroy | USDC NDIL | 1:11-cv-00118 |
| m | David Gecht | USDC NDIL | 1:23-cv-01742 |
| n | Demetrius Johnson | USDC NDIL | 1:20-cv-04156 |
| o | Demond Weston | USDC NDIL | 1:20-CV-06189 |
| p | Edwin Davilla | USDC NDIL | 1:23-cv-01739 |
| q | Eruby Abrego | USDC NDIL | 1:23-cv-01740 |
| r | Francisco Benitez | USDC NDIL | 1:23-cv-16896 |
| s | Francisco Nanez | USDC NDIL | 1:23-cv-03162 |
| t | Gabriel Solache | USDC NDIL | 1:18-cv-02312 |
| u | Gamalier Rivera | USDC NDIL | 1:23-cv-01743 |
| v | Gerardo Iglesias | USDC NDIL | 1:19-cv-06508 |
| w | Jacques Rivera | USDC NDIL | 1:12-cv-04428 |
| x | Jaime Rios | USDC NDIL | 1:22-cv-03973 |
| y | James Allen | USDC NDIL | 1:22-cv-03044 |
| z | James Marshall | USDC NDIL | 1:21-cv-00694 |
| aa | Jeremiah Cain | USDC NDIL | 1:23-cv-14282 |
| bb | John Galvan | USDC NDIL | 1:23-cv-03158 |
| cc | John Martinez | USDC NDIL | 1:23-cv-01741 |

| | | | |
|---|---|---|---|
| dd | Johnny Flores | USDC NDIL | 1:23-cv-01736 |
| ee | Jose Cruz | USDC NDIL | 1:23-cv-04268 |
| ff | Jose Juan Maysonet, Jr. | USDC NDIL | 1:18-cv-02342 |
| gg | Jose Montanez | USDC NDIL | 1:17-cv-04560 |
| hh | Juan Hernandez; Rosendo Hernandez | USDC NDIL | 1:23-cv-01737 |
| ii | Juan Johnson | USDC NDIL | 1:05-cv-01042 |
| ll | Keith Walker | USDC NDIL | 1:21-cv-04231 |
| kk | Lafonso Rollins | USDC NDIL | 1:05-cv-02532 |
| ll | Lee Harris | USDC NDIL | 1:23-cv-14220 |
| mm | Nicholas Escamilla | USDC NDIL | 1:24-cv-11090 |
| nn | Reynaldo Munoz | USDC NDIL | 1:23-cv-03210 |
| oo | Ricardo Rodriguez | USDC NDIL | 1:18-cv-07951 |
| pp | Richard Kwil | USDC NDIL | 1:23-cv-04279 |
| qq | Robert Bouto | USDC NDIL | 1:19-cv-02441 |
| rr | Roberto Almodovar, Jr. | USDC NDIL | 1:18-cv-02341 |
| ss | Thomas Sierra | USDC NDIL | 1:18-cv-03029 |
| tt | Tyrone Reyna | USDC NDIL | 1:24-cv-10815 |
| uu | Victor Safforld f/k/a Cortez Brown | Cook County, Illinois | 90CR2399701 |
| vv | William Negron | USDC NDIL | 1:18-cv-02701 |
| ww | Victor Vera | Cook County, Illinois | 89CR1103904 |

**OBJECTION:** Defendant City objects to this request as vague and ambiguous, overly burdensome, and irrelevant, and therefore, not proportional to the needs of this case.

**Vague and ambiguous:** Plaintiffs do not provide a definition for the following terms: "complaint," "answers to complaints," "answers to written discovery," and "final judgments." As to "complaints," the City presumes Plaintiffs are requesting the civil complaint filed in these cases. Still, it is unclear if Plaintiffs are referring to any other type of "complaint" made by the individuals identified in this request. As for "answers to complaints," the request does not specify if Plaintiffs are requesting the City's answers or all the defendants' answers. If the request is for all defendants, that would also include any answers from any Cook County defendants.

Plaintiffs also do not define "answers to written discovery," so it is unclear if this request includes the written responses to discovery only, or also the corresponding document production with each response. And Plaintiffs do not specify if this request includes the "written discovery" for all parties in each case, or if it includes subpoena responses.

**Lastly, as to "final judgments," it is not clear what specific document Plaintiffs seek. Plaintiffs may be seeking the final docket entry from the Court referencing the resolution of the civil cases, but Plaintiffs may be seeking something substantive, like a written opinion or hearing transcript. Nor is it clear if Plaintiffs are requesting something from the underlying criminal cases.**

**Overbroad and unduly burdensome:** **This request is overly broad and unduly burdensome because it pertains to 49 lawsuits, many of which have been, and continue to be, litigated for years. Further, 23 of them involve criminal investigations that occurred after 1992, two of them involve criminal investigations that occurred many years before 1992 (*Anderson*, 1980; *Fauntleroy*, 1983), and one (*Abernathy*) does not involve the City of Chicago.**

**As to Plaintiffs' request for pleadings, that request is burdensome because the pleadings are publicly available. Similarly, if Plaintiffs' request for "final judgments" means an order from the Court, that, too, can be found on the public docket.**

**Plaintiffs' request for written discovery is overbroad and unduly burdensome because of the volume of material at issue. There are several parties in these cases, each of whom has answered several sets of written discovery. Further, much of the discovery exchanged in these civil cases pertains to the underlying criminal cases and the defendant officers' alleged misconduct, not necessarily the *Monell* claim. What's more, if the request includes the document production, then it encompasses an overwhelming volume of material. Indeed, there are hundreds of thousands of pages of documents disclosed in these cases. And, some of the documents are protected by the various confidentiality and HIPAA protective orders entered in each of them. Reviewing all of these materials and assembling them for reproduction here is an enormous undertaking, and, from the City's perspective, the majority of the materials have no relevance to any of Plaintiffs' *Monell* theories.**

**As to deposition transcripts, assuming an average of five defendants per case (which is just an estimate, some have more and some have less), and adding in the depositions of the plaintiffs, Plaintiffs are requesting nearly 300 party transcripts. The number is greater if Plaintiffs are also requesting Rule 30(b)(6) deposition transcripts and depositions for any Cook County defendants. That is tens of thousands of pages of testimony. Further, parties are only one category of individuals deposed in these cases. If Plaintiffs intend to rely on the allegations of the identified individuals to support their *Monell* claims, that necessarily opens the door to *all* the depositions of the defendants' witnesses, who may undermine the plaintiffs' allegations. Naturally, cramming the litigation of 49 lawsuits into this one expands the scope of the *Monell* record exponentially.**

**As for criminal trial transcripts and certificates of innocence, they are not documents maintained or produced by the City. Rather, the defendants often obtain them from the Circuit Court of Cook County, or they are found in the prosecutors' or criminal defense attorneys' files for the underlying criminal cases. And often, the transcripts are also produced by the plaintiff(s) in the case. Responding to this request, therefore, requires the City to sort through *other* parties' production to find and compile each set (as complete as possible) for the**

6

**criminal transcripts for 49 cases. This is particularly burdensome when these are not the City's documents. The same is true for certificates of innocence. They are typically produced *to* the City by the plaintiffs who obtain them in their post-conviction proceedings. Sorting through the plaintiffs' production to find those documents for each of these cases is a time-intensive endeavor.**

**Further, because the litigation in many of these cases is ongoing, this request is unduly burdensome. It requires the City to supplement its response when there are amended pleadings, new party depositions, new written discovery exchanged, new criminal transcripts obtained, and/or newly obtained certificates of innocence or final judgments.**

**Finally, two of the lawsuits identified are twenty years old. Searching for responsive documents from that long ago is unduly burdensome. And there are two cases identified in the list that appear to be criminal docket numbers from 1990 and 1989. Presumably, Plaintiffs could not find a civil lawsuit brought by either of the identified individuals, but the City is not the custodian of records for criminal cases. And, as explained, there are hundreds of thousands of documents produced across these cases. To the extent any party produced responsive documents for those two individuals and their criminal cases would require a time-intensive search of hundreds of thousands of documents.**

**<u>Not proportional to the needs of the case:</u> Not only is the request overbroad and unduly burdensome, but responsive documents would not advance Plaintiffs' *Monell* claims, making the request disproportionate to the needs of the case. Twenty-three of the listed cases involve criminal investigations that occurred after 1992, when the murders for which Plaintiffs were convicted were investigated. Two of the cases involve criminal investigations that occurred many years before 1992 (*Anderson*, 1980; *Fauntleroy*, 1983), and one case (*Abernathy*) does not involve the City of Chicago at all.**

**It appears Plaintiffs intend to advance widespread practice theories to support their *Monell* claims. Yet, of the 49 cases listed, 34 pertain to allegations made against Defendant Guevara. That means there are only 15 non-Guevara cases, and, of those, at least four pertain to allegations made against former Chicago Police detective Kenneth Boudreau, who has also been the target of many lawsuits. The Supreme Court has made clear, however, that the "City cannot be held liable merely because it employs an individual personally liable for a tort." *See Brown v. City of Chi.*, 633 F. Supp. 3d 1122, 1175 (N.D. Ill. 2022) (citing *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 430 (1997)). "[T]he gravamen [of a *Monell* claim] is not individual misconduct by police officers…but *widespread practice* that permeates a critical mass of an institutional body." *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1071 (N. D. Ill. 2018).**

**Further, lawsuits filed decades after the events at issue are insufficient to establish a *Monell* claim. *See Black v. City of Chi.,* No. 18-cv-6518, 2022 U.S. Dist. LEXIS 24845, at *13-14 (N.D. Ill. Feb. 11, 2022) (A *Monell* claim is not established by demonstrating a municipality "gets sued a lot"). Whether an individual subsequently files a civil lawsuit years after the fact is immaterial to whether the City's policymakers knew of and were deliberately indifferent to violations of individuals' constitutional rights at the time. As stated, 23 of the identified cases involve homicide investigations that occurred after 1992, when the underlying investigations**

7

**of Plaintiffs occurred. Quite obviously, alleged misconduct that occurred *after* 1992 could not have put the City on notice of the alleged misconduct *before* 1992. *See Brown*, 633 F. Supp. 3d at 1175 ("Municipal liability attaches only where the final policymaker acts with deliberate indifference as to the known or obvious consequences of that action") (*citing Bryan County*, 520 U.S. at 407).**

2. All documents, reports, and any investigatory materials by the City of Chicago including but not limited to investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, or any other agency, firm, or organization retained by the City of Chicago, relating to any of the allegations set forth in any of the following cases:

| Request subparagraph | Plaintiff | Jurisdiction | Case No. |
|---|---|---|---|
| a | Alfredo Gonzalez | USDC NDIL | 1:22-cv-06496 |
| b | Anthony Jakes | USDC NDIL | 1:19-cv-02204 |
| c | Ariel Gomez | USDC NDIL | 1:18-cv-03335 |
| d | Armando Serrano | USDC NDIL | 1:17-cv-02869 |
| e | Arnold Day | USDC NDIL | 1:19-cv-07286 |
| f | Arthur Brown | USDC NDIL | 1:18-cv-07064 |
| g | Arturo DeLeon-Reyes | USDC NDIL | 1:18-cv-01028 |
| h | Christopher Abernathy | USDC NDIL | 1:16-cv-02128 |
| i | Daniel Andersen | USDC NDIL | 1:16-cv-01963 |
| j | Daniel Rodriguez | USDC NDIL | 1:22-cv-06141 |
| k | David Colon / David Lugo | USDC NDIL | 1:23-cv-01738 |
| l | David Fauntleroy | USDC NDIL | 1:11-cv-00118 |
| m | David Gecht | USDC NDIL | 1:23-cv-01742 |
| n | Demetrius Johnson | USDC NDIL | 1:20-cv-04156 |
| o | Demond Weston | USDC NDIL | 1:20-CV-06189 |
| p | Edwin Davilla | USDC NDIL | 1:23-cv-01739 |
| q | Eruby Abrego | USDC NDIL | 1:23-cv-01740 |
| r | Francisco Benitez | USDC NDIL | 1:23-cv-16896 |
| s | Francisco Nanez | USDC NDIL | 1:23-cv-03162 |
| t | Gabriel Solache | USDC NDIL | 1:18-cv-02312 |
| u | Gamalier Rivera | USDC NDIL | 1:23-cv-01743 |
| v | Gerardo Iglesias | USDC NDIL | 1:19-cv-06508 |
| w | Jacques Rivera | USDC NDIL | 1:12-cv-04428 |
| x | Jaime Rios | USDC NDIL | 1:22-cv-03973 |

| | | | |
|---|---|---|---|
| y | James Allen | USDC NDIL | 1:22-cv-03044 |
| z | James Marshall | USDC NDIL | 1:21-cv-00694 |
| aa | Jeremiah Cain | USDC NDIL | 1:23-cv-14282 |
| bb | John Galvan | USDC NDIL | 1:23-cv-03158 |
| cc | John Martinez | USDC NDIL | 1:23-cv-01741 |
| dd | Johnny Flores | USDC NDIL | 1:23-cv-01736 |
| ee | Jose Cruz | USDC NDIL | 1:23-cv-04268 |
| ff | Jose Juan Maysonet, Jr. | USDC NDIL | 1:18-cv-02342 |
| gg | Jose Montanez | USDC NDIL | 1:17-cv-04560 |
| hh | Juan Hernandez; Rosendo Hernandez | USDC NDIL | 1:23-cv-01737 |
| ii | Juan Johnson | USDC NDIL | 1:05-cv-01042 |
| ll | Keith Walker | USDC NDIL | 1:21-cv-04231 |
| kk | Lafonso Rollins | USDC NDIL | 1:05-cv-02532 |
| ll | Lee Harris | USDC NDIL | 1:23-cv-14220 |
| mm | Nicholas Escamilla | USDC NDIL | 1:24-cv-11090 |
| nn | Reynaldo Munoz | USDC NDIL | 1:23-cv-03210 |
| oo | Ricardo Rodriguez | USDC NDIL | 1:18-cv-07951 |
| pp | Richard Kwil | USDC NDIL | 1:23-cv-04279 |
| qq | Robert Bouto | USDC NDIL | 1:19-cv-02441 |
| rr | Roberto Almodovar, Jr. | USDC NDIL | 1:18-cv-02341 |
| ss | Thomas Sierra | USDC NDIL | 1:18-cv-03029 |
| tt | Tyrone Reyna | USDC NDIL | 1:24-cv-10815 |
| uu | Victor Safforld f/k/a Cortez Brown | Cook County, Illinois | 90CR2399701 |
| vv | William Negron | USDC NDIL | 1:18-cv-02701 |
| ww | Victor Vera | Cook County, Illinois | 89CR1103904 |

**OBJECTION:** **The City objects to this request as vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case.**

**Vague and ambiguous:** **Because this request references Internal Affairs, the Office of Professional Standards, and the Independent Police Review Authority, the purpose of this request may be to seek complaint register ("CR") files. Yet, Plaintiffs do not define "reports" or "investigatory material," so it is not clear if Plaintiffs are requesting documents for disciplinary investigations for the listed cases or if Plaintiffs are requesting documents related to the underlying criminal investigations for each case. Nor does the definition of "document"**

9

above provide any additional clarity. In addition, Plaintiffs do not define "or any other agency, firm, or organization retained by the City of Chicago," or "relating to any of the allegations set forth in any of the following cases." Read most broadly, it appears that Plaintiffs are requesting *any report or document at all* relating to any of these cases.

**Overbroad and unduly burdensome:** Certainly, a request for any document related to these cases is overbroad and unduly burdensome. It also potentially requires the production of privileged attorney-client communication and/or work product. Further, it is overbroad and unduly burdensome based on the definition of "documents," which unnecessarily includes communications, and the definition of "relating to," which is unlimited as to scope. And, this request is not limited as to time, so it includes a request for documents from decades ago, when the underlying criminal cases were investigated, all the way through the present day, when these cases are still being litigated.

Even if this request were limited to CR files for complaints made by the identified individuals, it still requires the City to search for 49 separate cases. And the City has already produced CR files for the defendants in this case, including Defendant Guevara. That means Plaintiffs can determine what, if any, CR files they already have that are relevant to their *Monell* theories or pertain to the listed cases, rather than listing every single lawsuit against Defendant Guevara here. Searching for CR files related to the remaining 15 non-Guevara cases is also unduly burdensome in that it is only a small fraction of the hundreds of homicides investigated by detectives across the City at the time of Plaintiffs' criminal cases, and, thus, insufficient to show a widespread practice of any of Plaintiffs' myriad theories. Further, three of the 15 non-Guevara cases involved criminal investigations occurring after 1992, two were many years before, and one did not involve the City of Chicago at all.

**Not proportional to the needs of the case:** If Plaintiffs are requesting all documents related to these cases, then the scope of the request far outweighs any evidentiary value. Certainly, not all documents obtained or produced in these cases are relevant to Plaintiffs' *Monell* theories. Further, as noted above, disciplinary proceedings against a handful of other officers, if they exist, and if they predate 1992, are insufficient to show a widespread practice necessary to establish *Monell* liability.

3. All training materials provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to conducting witness and suspect interviews and/or interrogations.

**OBJECTION:** The City objects to this request as overbroad and unduly burdensome, and not proportional to the needs of the case.

**Overbroad and unduly burdensome:** While the City does not object to producing the training materials it can locate in its possession as to suspect interrogations and witness interviews, this request is overbroad and unduly burdensome based on the time period. The City appreciates that the time period in this request ends in 1992, when the murders for which Plaintiffs were convicted were investigated. But 16 years prior to 1992 is excessive. In fact, in deciding the relevant *Monell* discovery period, Courts often do not set more than four years

10

prior to the underlying case as the relevant time frame, which would be 1989-1992 here. During a previous meet and confer on these requests, Plaintiffs' counsel stated that the time period was chosen because 1976 was when Defendant Guevara became a police officer. This proves the City's point that Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer.

**Not proportional to the needs of the case:** For similar reasons, training provided to "CPD trainees" and "officers," in general, is not relevant to Plaintiffs' *Monell* theories and, therefore, is not proportional to the needs of the case. Indeed, Plaintiffs' *Monell* theories pertain to the investigation of homicides, which is a unique responsibility assigned to detectives. And, indeed, that is the training that Plaintiff Mulero alleges was constitutionally deficient, and it does not appear that Plaintiff Mendoza even alleges a failure to train claim. Therefore, training for any other officers is not relevant.

**The City proposes this request is limited to the time frame of 1989-1992 and limited to training provided to detectives on the topic of witness and suspect interviews and interrogations.**

4. All training materials provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to interrogating and interviewing jailhouse informants.

**OBJECTION:** The City objects to this request as vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case.

**Vague and ambiguous:** Plaintiffs do not define the term "jailhouse informants." It is not clear if this request is pertaining to the situation where someone who is incarcerated provides information about a crime, or the situation where someone comes to learn information about a crime because of something witnessed while incarcerated, or the situation where someone provides information on a confidential basis, like a registered cooperating individual.

**Overbroad and unduly burdensome:** While the City does not object to producing training materials it can locate in its possession as to detectives' interviews of witnesses, this request is overbroad and unduly burdensome based on the time period. The City appreciates that the time period ends in 1992, when the murders for which Plaintiffs were convicted were investigated. But 16 years prior is excessive. In fact, in deciding the relevant *Monell* discovery period, Courts often do not set more than four years prior to the underlying case as the relevant time frame, which would be 1989-1992 here. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose 1976 because that was when Defendant Guevara became a police officer. This proves the City's point that Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer.

**Not proportional to the needs of the case:** For similar reasons, training provided to "CPD trainees" and "officers," in general, is not relevant to Plaintiffs' *Monell* theories and, therefore, is not proportional to the needs of the case. Plaintiffs' *Monell* theories pertain to

11

**the investigation of homicides, the investigation of which is a unique responsibility assigned to detectives. Indeed, that is the training that Plaintiff Mulero was constitutionally deficient, and it does not appear that Plaintiff Mendoza alleges a failure to train claim. Therefore, training provided to any other officers is not relevant.**

**The City proposes that this request is limited to the time frame of 1989-1992 and limited to training provided to detectives on the topic of witness and suspect interviews and interrogations. Because a "jailhouse informant" is a witness, this request is encompassed by request number 3.**

      5.      All training materials provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to interrogating and interviewing witnesses in custody about matters unrelated to the allegations against the witnesses.

**OBJECTION:** **The City objects to this request as vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case.**

**Vague and ambiguous:** **Plaintiffs do not define "matters unrelated to the allegations against the witnesses." The phrase is confusing and, therefore, it is not clear what subject matter for which Plaintiffs are requesting training materials. And, like request number 4, the City fails to see how this request is materially different from request number 3.**

**Overbroad and unduly burdensome:** **While the City does not object to producing training materials it can locate in its possession as to detectives' interviews of witnesses, this request is overbroad and unduly burdensome based on the time period. The City agrees that the appropriate end date of the time period is 1992, when the murders for which Plaintiffs were convicted were investigated. But 16 years prior is excessive. In fact, in deciding the relevant *Monell* discovery period, Courts often do not set more than four years prior to the underlying case as the relevant time frame, which would be 1989-1992 here. During a previous meet and conferral on these requests, Plaintiffs' counsel stated they chose the time period because 1976 was when Defendant Guevara became a police officer. This proves the City's point that Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").**

**Not proportional to the needs of the case:** **For similar reasons, training provided to "CPD trainees" and "officers," in general, is not relevant to Plaintiffs' *Monell* theories and, therefore, is not proportional to the needs of the case. Plaintiffs' *Monell* theories pertain to the investigation of homicides, which is a unique responsibility assigned to Detectives. Indeed, that is the training that Plaintiff Mulero alleges was constitutionally deficient, and it does not appear that Plaintiff Mendoza even alleges a failure to train claim. Therefore, training that any other officers are provided is not relevant.**

12

**The City proposes that this request is limited to the time frame of 1989-1992 and limited to training provided to detectives on the topic of witness and suspect interviews and interrogations. Because a witness interviewed "about matters unrelated to the witness" is still a witness, this request is encompassed by request number 3.**

6. All training materials provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to identification procedures for witnesses (such as show-ups, line-ups, photo arrays, and single-photo identification procedures).

**OBJECTION:** **The City objects to this request as overbroad and unduly burdensome, and not proportional to the needs of the case.**

**Overbroad and unduly burdensome:** **While the City does not object to producing training materials it can locate in its possession as to eyewitness identification procedures, this request is overbroad and unduly burdensome based on the time period. The City agrees that the appropriate end date of the time period is 1992, when the murders for which Plaintiffs were convicted were investigated. But 16 years prior is excessive. In fact, in deciding the relevant *Monell* discovery period, Courts often do not set more than four years prior to the underlying case as the relevant time frame, which would be 1989-1992 here. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. This proves the City's point that Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").**

**Not proportional to the needs of the case:** **For similar reasons, training provided to "CPD trainees" and "officers," in general, is not relevant to Plaintiffs' *Monell* theories and, therefore, is not proportional to the needs of the case. Plaintiffs' *Monell* theories pertain to the investigation of homicides, which is a unique responsibility assigned to detectives. Indeed, that is the training that Plaintiff Mulero alleges was constitutionally deficient, and it does not appear that Plaintiff Mendoza even alleges a failure to train claim. Therefore, training that any other officers are provided is not relevant.**

**The City proposes that this request is limited to 1989-1992 and limited to training provided to detectives for identification procedures.**

7. All training materials provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to the documentation and preservation of information learned during a homicide investigation.

13

**OBJECTION: The City objects to this request as overbroad and unduly burdensome, and not proportional to the needs of the case.**

**Overbroad and unduly burdensome: While the City does not object to producing training materials it can locate in its possession as to detectives documenting and preserving information learned during a homicide investigation, this request is overbroad and unduly burdensome based on the time period. The City agrees that the appropriate end date of the time period is 1992, when the murders for which Plaintiffs were convicted were investigated. But 16 years prior is excessive. In fact, in deciding the relevant *Monell* discovery period, Courts often do not set more than four years prior to the underlying case as the relevant time frame, which would be 1989-1992 here. During a previous meet and confer on these requests, Plaintiffs' counsel stated that the time period was chosen because 1976 was when Defendant Guevara became a police officer. This proves the City's point that Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").**

**Not proportional to the needs of the case: For similar reasons, training provided to "CPD trainees" and "officers," in general, is not relevant to Plaintiffs' *Monell* theories and, therefore, is not proportional to the needs of the case. Plaintiffs' *Monell* theories pertain to the investigation of homicides, which is a unique responsibility assigned to detectives. Indeed, that is the training that Plaintiff Mulero alleges was constitutionally deficient, and it does not appear that Plaintiff Mendoza even alleges a failure to train claim. Therefore, training provided to any other officers is not relevant.**

**This request is also not proportional to the needs of the case because Plaintiffs have confirmed that the only *Brady* evidence they claim the officers withheld in this case was evidence of their own alleged misconduct. Without evidence that Defendants withheld exculpatory evidence they discovered in investigating the case, this training topic is not relevant. Nevertheless, the City agrees to produce the training materials it can locate in its possession related to training provided in 1989-1992 related to detectives documenting information learned during a homicide investigation.**

      8.     All training materials provided to CPD trainees, officers, and detectives between 1976 through 1992, relating to obligations under *Brady v. Maryland*.

**OBJECTION: The City objects to this request as overbroad and unduly burdensome, and not proportional to the needs of the case.**

**Overbroad and unduly burdensome: While the City does not object to producing training materials it can locate in its possession as to detectives' *Brady* obligations, this request is overbroad and unduly burdensome based on the time period. The City agrees that the appropriate end date of the time period is 1992, when the murders for which Plaintiffs were convicted were investigated. But 16 years prior is excessive. In fact, in deciding the relevant**

14

*Monell* discovery period, Courts often do not set more than four years prior to the underlying case as the relevant time frame, which would be 1989-1992 here. During a previous meet and confer on these requests, Plaintiffs' counsel stated that they chose the time period because 1976 was when Defendant Guevara became a police officer. This proves the City's point that Plaintiffs' focus on Defendant Guevara for their *Monell* claim is misguided. Plaintiffs bear the burden of establishing a true City policy in place, not merely allegations against one officer. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "a widespread practice that permeates a critical mass of an institutional body").

**Not proportional to the needs of the case:** For similar reasons, training provided to "CPD trainees" and "officers," in general, is not relevant to Plaintiffs' *Monell* theories and, therefore, is not proportional to the needs of the case. Plaintiffs' *Monell* theories pertain to the investigation of homicides, which is a unique responsibility assigned to detectives. Indeed, that is the training that Plaintiff Mulero alleges was constitutionally deficient, and it does not appear that Plaintiff Mendoza even alleges a failure to train claim. Therefore, training provided to any other officers is not relevant.

This request is also not proportional to the needs of the case because Plaintiffs have confirmed that the only *Brady* evidence they claim the officers withheld in this case was evidence of their own alleged misconduct. Without evidence that Defendants withheld exculpatory evidence they discovered in investigating the case, this training topic is not relevant. Nevertheless, the City will agree to produce the training materials it can locate in its possession provided to detectives from 1989-1992 regarding their obligations under *Brady v. Maryland*.

9. All CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to conducting witness and suspect interviews and/or interrogations.

**OBJECTION:** The City objects to this request as overbroad and unduly burdensome.

**Overbroad and unduly burdensome:** As explained with the above requests, the time period of this request is excessive. CPD written directives change over time, and it is unduly burdensome to require the City to search for any written directives on this topic that were not in effect at the time the murders for which Plaintiffs were convicted were investigated. In fact, Plaintiffs do not even take issue with the City's written directives, instead alleging the City is liable pursuant to *Monell* due to "*de facto*" policies.

Nevertheless, the City will agree to produce any written directive on this topic in effect in 1992.

10. All CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to interrogating and interviewing jailhouse informants.

**OBJECTION: The City objects to this request as vague and ambiguous and overbroad and unduly burdensome.**

**Vague and ambiguous: As explained above, the City is unclear as to what Plaintiff intends for this request as to "jailhouse informants." The City needs a properly defined topic to conduct the relevant search. As long as Plaintiffs are not requesting directives pertaining to an individual who is registered as a confidential cooperating individual, the appropriate topic overlaps with request number 9, as an individual who provides information about a crime while in custody is still a witness.**

**Overbroad and unduly burdensome: As explained with the above requests, the time period of this request is excessive. CPD written directives change over time, and it is unduly burdensome to require the City to search for any written directives on this topic that were not in effect at the time the murders for which Plaintiffs were convicted were investigated. In fact, Plaintiffs do not even take issue with the City's written directives, instead alleging the City is liable pursuant to *Monell* due to "*de facto*" policies.**

**Nevertheless, the City will agree to produce any written directive on this topic of witness interviews in effect in 1992.**

11. All CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to interrogating and interviewing witnesses in custody about matters unrelated to the allegations against the witnesses.

**OBJECTION: The City objects to this request as vague and ambiguous and overbroad and unduly burdensome.**

**Vague and ambiguous: As explained above, the City is unclear as to what Plaintiff intends for this request as to "matters unrelated to the allegations against the witness." The City needs a properly defined topic to conduct a relevant search. Whether a detective questions a witness about "matters unrelated to the allegations against the witness," the person providing information about a crime is still a witness, and, therefore, the appropriate topic for this request overlaps with request number 9.**

**Overbroad and unduly burdensome: As explained with the above requests, the time period of this request is excessive. CPD written directives change over time, and it is unduly burdensome to require the City to search for any written directives on this topic that were not in effect at the time the murders for which Plaintiffs were convicted were investigated. In fact, Plaintiffs do not even take issue with the City's written directives, instead alleging the City is liable pursuant to *Monell* due to "*de facto*" policies.**

**Nevertheless, the City will agree to produce any written directive on the topic of interviewing witnesses in effect in 1992.**

12. All CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to identification procedures for witnesses (such as show-ups, lineups, photo arrays, and single-photo identification procedures).

**OBJECTION: The City objects to this request as overbroad and unduly burdensome.**

**Overbroad and unduly burdensome:** **As explained with the above requests, the time period of this request is excessive. CPD written directives change over time, and it is unduly burdensome to require the City to search for any written directives on this topic that were not in effect at the time the murders for which Plaintiffs were convicted were investigated. In fact, Plaintiffs do not even take issue with the City's written directives, instead alleging the City is liable pursuant to *Monell* due to "*de facto*" policies.**

**Nevertheless, the City will agree to produce any written directive on this topic of eyewitness identification procedures in effect in 1992.**

13. All CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to the documentation and preservation of information learned during a homicide investigation.

**OBJECTION: The City objects to this request as overbroad and unduly burdensome.**

**Overbroad and unduly burdensome:** **As explained with the above requests, the time period of this request is excessive. CPD written directives change over time, and it is unduly burdensome to require the City to search for any written directives on this topic that were not in effect at the time the murders for which Plaintiffs were convicted were investigated. In fact, Plaintiffs do not even take issue with the City's written directives, instead alleging the City is liable pursuant to *Monell* due to "*de facto*" policies.**

**Nevertheless, the City will agree to produce any written directive on this topic of detectives documenting and preserving information learned during a homicide investigation in effect in 1992.**

14. All CPD orders, standards, policies, or procedures that were in effect between 1976 through 1992 and govern or apply to obligations under *Brady v. Maryland*.

**OBJECTION: The City objects to this request as overbroad and unduly burdensome.**

**Overbroad and unduly burdensome: As explained with the above requests, the time period of this request is excessive. CPD written directives change over time, and it is unduly burdensome to require the City to search for any written directives on this topic that were not in effect at the time the murders for which Plaintiffs were convicted were investigated. In fact, Plaintiffs do not even take issue with the City's written directives, instead alleging the City is liable pursuant to *Monell* due to "*de facto*" policies.**

**Nevertheless, the City will agree to produce any written directive on the topic of detectives' *Brady* obligations in effect in 1992.**

15. All documents, reports, and any investigatory materials by the City of Chicago, or investigations or audits by the City of Chicago to identify, investigate, or prevent any of the following types of misconduct—including but not limited to investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, or any other agency, firm, or organization retained by the City of Chicago—to identify, investigate, prevent, or impose discipline, related to any the following types of misconduct:

   a. The use of force, coercion or other prohibited techniques to obtain incriminating statements from witnesses or suspects.

   b. Misconduct in conducting, documenting, and supervising identification procedures for witnesses such as show-ups, line-ups, photo arrays, clothing lineups, and single-photo identification procedures. This includes, but is not limited to misconduct in structuring, performing, or initiating such identification procedures; failing to properly document an identification procedure; failing to properly inventory evidence resulting from an identification procedure; misconduct in the selection and use of fillers; misconduct in the communication of information about suspects or defendants to witnesses participating in identification procedures; and the failure to create and preserve Documentation relating to any of the foregoing subjects.

   c. Fabrication of inculpatory evidence.

   d. Failure to properly document or place *Brady* evidence in official police department files, or otherwise withholding material, exculpatory information from prosecutors, suspects, criminal defendants and their attorneys.

   e. Failure to document investigative activities and information learned during a homicide investigation.

18

**OBJECTION:** The City objects to this request as vague and ambiguous and overbroad and unduly burdensome and not proportional to the needs of the case.

**Vague and ambiguous:** Plaintiffs do not define what they mean by "documents, reports, and investigatory materials," or "investigations or audits." Nor do Plaintiffs define "or any other agency, firm, or organization retained by the City of Chicago." It is also unclear what Plaintiffs are requesting with respect to "identify, investigate, or prevent." Further, it is not clear whether Plaintiffs intend for this request to include the investigation conducted by Sidley & Austin. The City of Chicago Department of Law engaged Scott Lassar and Sidley & Austin to conduct a review and provide advice regarding certain cases handled by former detective Guevara. That investigation concluded in 2015. The communications regarding the investigation and the results of the investigation are privileged pursuant to the work-product and attorney-client privilege, and, as stated in previous discovery responses, the City has withheld the privileged documents. Nevertheless, the City has already produced the non-privileged documents related to the investigation at RFC Lassar 5646-130211.

**Overbroad and unduly burdensome:** It appears, based on this request, that Plaintiffs are seeking every CR file in CPDs' possession that relates to the five categories of misconduct alleged in this request. During a previous meet and confer, the City explained that it cannot search for CR files by topic in that matter. CR files are coded by the primary allegation, and the codes are not specific enough to choose categories that match Plaintiffs' request. For that reason, the City must conduct a manual search of all the CR files, which requires obtaining the disciplinary history for each officer at play (which, in this case, appears to be all of them) and then ordering the CR files from those histories. Here, Plaintiffs have not limited this to any category of officers (either by unit of assignment, or place of assignment, like a particular Detective Division Area), and Plaintiffs have not limited this interrogatory as to time period. As such, with this request, Plaintiffs are demanding that the City examine *all CR files* to identify any that fit in the listed categories. According to the 1992 published CPD annual report, for that year *only*, there were 10,592 CRs initiated. Obtaining and reviewing these files would be a herculean task, which is only compounded by the demand for additional years. It is not possible to estimate how long that would take, but without a doubt, it is well beyond any reasonable discovery period.

**Not proportional to the needs of the case:** The burden described above far outweighs any benefit to Plaintiffs. Plaintiffs' alleged failure to discipline claim is dependent on first establishing liability against the Defendant Officers, and, even if successful on a *Monell* claim, Plaintiffs would not recoup any additional damages. This is far outweighed by the enormous time and expense it would take the City to comply with this request.

16. All documents, reports, and any investigatory materials by the City of Chicago related to efforts by the City of Chicago to identify, investigate, or prevent—including through investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, any other agency, firm, or organization retained by the City of Chicago,

19

0r any other federal, state or local law enforcement agency—wrongful acts by Reynaldo Guevara, Ernest Halvorsen, Stephen Gawrys, and Anthony Riccio.

**OBJECTION:** The City objects to this request as vague and ambiguous and not proportional to the needs of the case.

**Vague and ambiguous:** Plaintiffs do not define what they mean by "documents, reports, and investigatory materials," or "investigations or audits." Nor do Plaintiffs define "or any other agency, firm, or organization retained by the City of Chicago." It is also unclear what Plaintiffs are requesting with respect to "efforts" to "identify, investigate, or prevent," or why Plaintiffs would be requesting documents from the City as documents maintained or created by "any other federal, state or local law enforcement agency." And it is unclear what Plaintiffs mean by "wrongful acts." The City needs a properly defined request to conduct a reasonable search.

**Not proportional to the needs of the case:** This request is not limited as to time. Further, to the extent this request pertaining to CR files, the City has already produced CR files for the defendant officers. What's more, City has already produced the non-privileged documents related to the Scott Lassar and Sidley & Austin review at RFC Lassar 5646-130211.

Dated: May 30, 2025

                                       Respectfully Submitted,

                                       /s/ *Catherine M. Barber*
                                       *Special Assistant Corporation Counsel*
                                       *Attorney for the City of Chicago*

                                       Eileen E. Rosen
                                       Catherine M. Barber
                                       Theresa B. Carney
                                       Austin G. Rahe
                                       Lauren Ferrise
                                       Rock Fusco & Connelly, LLC
                                       333 W. Wacker, 19th Floor
                                       Chicago, Illinois 60606
                                       (312) 494-1000
                                       cbarber@rfclaw.com