IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADELINE MENDOZA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-2441 |
| REYNALDO GUEVARA, et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| MARILYN MULERO, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 23-cv-4795 |
| v. | ) ) ) | |
| REYNALDO GUEVARA, et al., | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT RESPONSE TO THE COOK COUNTY STATE'S ATTORNEY'S OFFICE'S MOTION FOR PROTECTIVE ORDER**

Defendants Reynaldo Guevara, Geri Lynn Yanow, as Special Representative for Ernest Halvorsen, deceased, Anthony Riccio, Stephen Gawrys, and the City of Chicago (collectively "Defendants"), by and through their undersigned counsel, and responding to Cook County State's Attorney's Office's ("CCSAO") Motion for Protective Order, state as follows:

**I.     INTRODUCTION**

Defendants have been patient and accommodating with the CCSAO for the better part of a year in attempting to obtain information that this Court has already determined is discoverable. This Court issued an order that the Rule 30(b)(6) designees that the CCSAO provided (ASA Carol Rogala and ASA Adam Weber) could not adequately address certain relevant topics that Defendants

1

questioned of them. The CCSAO's motion retreads grounds that the office has already lost or waived. The CCSAO has asserted the Apex Doctrine, but this Court has already ruled that Foxx can be deposed. The CCSAO asserts deliberative process privilege, but Defendants are asking questions about Rule 30(b)(6) topics that were agreed upon and were already explored by Defendants in ASA Rogala's and ASA Weber's deposition (but which neither could answer).

The CCSAO also objects to a video recorded deposition and to anything more than two hours. There is no basis for her to avoid a video deposition. Many top-level officials, including the President of the United States and mayors of Chicago have sat for videotaped depositions. She is a public figure who has made public statements on video, in press conferences, and at public events on this very case. Her identity is not secret nor is the subject matter that she is talking about. The deposition is already limited by the topics that Defendants may explore. While Defendants do not anticipate a 7-hour deposition, they should be able to explore each of the topics Ms. Foxx is ordered to testify about. The CCSAO's Motion must be denied.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts procured through discovery and depositions of CCSAO attorneys, in combination with public comments by Ms. Foxx herself, demonstrate that Foxx has unique knowledge about the review undertaken to evaluate the Guevara cases and how Mulero's and Mendoza's came to be vacated. This Court recognized this already. *See* Dckt. No. 158. The 30(b)(6) topics have already been limited by this Court and Defendants simply want to address topics that only Ms. Foxx can answer.[1]

Until late 2022, the CCSAO stood by the validity of both Mulero's and Mendoza's convictions and fought them at every step. This occurred as recently as September 2019 under Ms. Foxx's own administration. *See* Ex. 1 (CCSAO's Objection To Mulero Clemency). In response to Mulero's petition

---

[1] A list of these topics are included in CCSAO's opening brief. *See* Dckt. No. 163 at 3-5. Defendants do not include them again for the sake of brevity.

for a commutation, the CCSAO (under the signature block of Ms. Foxx) laid out the CCSAO's position on Mulero's guilt in detail and advocated in favor of the validity of her prosecution. *Id.*

In March 2020, however, the CCSAO began having private meetings with members of the "Exoneration Project" (an entity representing numerous persons seeking post-conviction relief premised upon, among other things, allegations of misconduct against Guevara) regarding the CCSAO's policies in cases involving Guevara. *See* Ex. 2 (Dep. of A. Weber) at 91:17-109:24. These meetings were attended by the CCSAO's Conviction Integrity Unit's ("CIU") Deputy Director Adam Weber ("Weber"), CCSAO's First Assistant at the time Joseph Magats, as well as three employees of the Exoneration Project: Josh Tepfer, Sean Starr, and Anand Swaminathan.[2] *Id.* The members of the Exoneration Project requested that CCSAO implement a policy where the CCSAO would conduct a "more comprehensive review" of cases specific to Guevara. *Id.* After this meeting, First ASA Magats instructed Weber to craft a protocol consistent with what was discussed at the meeting. Ex. 2 at 94:23-94:19, 107:4-108:9. Weber did as he was instructed and crafted a policy to this effect. *Id.* at 108:15-109:24. Weber then submitted the draft to Ms. Foxx and it was approved without any changes. *Id.*

This policy was called the Guevara Case Review Protocol ("the Guevara Protocol"). *See* Ex. 3.[3] The Guevara Protocol implemented policies to be applied to persons who applied for review who were seeking post-conviction relief in cases in which Guevara was involved. *Id.* The Guevara Protocol included an extensive series of investigatory standards to be followed in investigating the merits of claims (*id.* at 7-8), the factors that the CCSAO would take into account after such investigation in determining how to address claims for post-conviction relief (*id.* at 8-9), and four different types of recommendations that the CCSAO would pursue depending on the outcome of the investigation (*id.*

---

[2] The Exoneration Project is an entity which is wholly owned and operated by the Law Firm Loevy & Loevy which currently has over 20 pending matters involving Guevara.
[3] In discovery, the CCSAO first provided a heavily redacted version of the Guevara Protocol. However, in advance of the CCSAO 30(b)(6) depositions, the CCSAO changed their position on the privileged nature of the Guevara Protocol and produced an unredacted copy.

at 9-10). The goal was for the CCSAO to do a comprehensive investigation of the merits of the cases and to "leave no stone unturned." Ex. 2 at 86:22-87:10, 137:20-140:20.

The Guevara Protocol was rolled out on December 7, 2020. Later that month, Mulero applied to have her case reviewed. *See* Ex. 2 at 36:3-6, 48:8-49:6. Because Mendoza was a co-defendant of Mulero, this review would have encompassed Mendoza's claims as well. *Id.* at 150:11-151:17. Between December 2020 and when Weber left the employ of the CCSAO in June 2022, there was essentially *no investigation whatsoever* done into Mulero's or Mendoza's cases under the Guevara Protocol. *Id.* at 145:8-146:18, 150:24-153:18, 165:2-18, 113:9-13, 130:3-132:9. Nor were there any determinations made regarding the merits of Mulero's or Mendoza's claims or any recommendation for post-conviction relief. *Id.* Nor did the CCSAO produce any documents in response to Defendants' document subpoena reflecting any investigation into the merits of Mulero's or Mendoza's claims under the Guevara Protocol or indicate they were withholding any on the basis of privilege. *See* Ex. 4.

Parallel to the Guevara Protocol "investigation," a separate unit of the CCSAO also began considering Mulero's claims for post-conviction relief. *See* Ex. 5 (Dep. Carol Rogala) at 28:4-7. Specifically, in March 2022, Mulero filed a Successive Petition for Post-Conviction Relief in the Circuit Court of Cook County. *Id.* This request for post-conviction relief was handled by CCSAO's Post-Conviction Unit and supervised by Assistant State's Attorney Carol Rogala. *Id.* at 78:7-84:5. After receiving this, Rogala began the process of starting the investigation into the claims made therein. *Id.* at 87:10-112:11. At her deposition, Rogala testified on behalf of the CCSAO without objection about the applicable standards and policies applied by the Post-Conviction Unit in investigating post-conviction claims. *Id.* at 31:19-73:18, 121:2-147:17. Rogala testified that the applicable standards were to perform a comprehensive investigation into the factual merits of a claim before any determination was made on whether CCSAO would agree to post-conviction relief. *Id.* As with the "investigation"

4

begun under the Guevara Protocol, no substantive investigation was done by the Post-Conviction Unit into the merits of Mulero's claims. *Id.* at 173:13-177:15, 201:20-202:14.

While this was pending, CCSAO began having *another* set of private communications with the Exoneration Project regarding CCSAO's policies on post-conviction cases involving Guevara. *See* Ex. 6 (Emails Between Exoneration Project and CCSAO); Ex. 7 (PowerPoint Presentation of Exoneration Project). These meetings/communications directly involved Ms. Foxx, as well as First Assistant State's Attorney Risa Lanier, along with Josh Tepfer, Anand Swaminathan and Steve Art of the Exoneration Project. *Id.* Neither Rogala nor Weber were present and so could not testify to what occurred. Email communications produced state expressly that Ms. Foxx was present for these meetings and in active communication with the Exoneration Project relating to Guevara policy. *See* Ex. 6. After this meeting, Ms. Foxx herself appears to have made a decision to significantly change how CCSAO handled post-conviction matters involving Guevara and to have discussed this with the Exoneration Project. *Id.*

Several weeks after a June 14, 2022 presentation by the Exoneration Project to Ms. Foxx and First Assistant Lanier, Ms. Foxx apparently had a conversation with Mr. Tepfer regarding CCSAO's policy decisions in Guevara-related matters. Ex. 6. Mr. Tepfer thanked Ms. Foxx for her "proactive positions on these issues" and noted "the substantive discussion with Ms. Foxx and the decision to no longer contest post-conviction matters where Guevara is at the heart of them." *Id.* Mr. Tepfer also noted that Ms. Foxx "advised [him] that this position will apply to all cases currently pending in court and/or with the CIU." *Id.* This email further suggests Ms. Foxx requested Mr. Tepfer coordinate in disseminating this new policy position to the post-conviction attorneys for other individuals with cases relating to Guevara. The email also contained numerous statements indicating Ms. Foxx had substantive discussions with the Exoneration Project about the rationale and substance of CCSAO's policy toward Guevara cases and the timing of the implementation of this policy. *Id.* Mulero's case is referenced in these discussions as one of the cases that would be subject to this new policy. *Id.*

5

While the Post-Conviction Unit, led by Rogala, was gearing up to do their investigation into Mulero's case, Rogala was summoned to a Zoom meeting with Ms. Foxx and other CCSAO officials in July 2022 (shortly after Ms. Foxx's meetings and discussions with the Exoneration Project) and told that CCSAO would no longer oppose post-conviction relief in a number of Guevara-related cases including Mulero's case. Ex. 5 at 191:11-199:15. Rogala was told to cease investigatory activities into Mulero's case. *Id.* at 201:9-202:14. Rogala testified that the statement by Mr. Tepfer regarding CCSAO's new position on vacating all cases where Guevara was at the heart of the investigation was consistent with her understanding of the policy she was told to implement in July 2022 and that it was different than the previous policy (which involved a case specific investigation). *Id.* at 190:13-196:19.

On August 9, 2022, Plaintiff Mulero's conviction was vacated by agreement with the CCSAO along with seven other cases involving Guevara. *See* Ex. 8 (Press Release). Every one of those eight cases were among the ones referenced by Mr. Tepfer in his July 13 email to Ms. Foxx and the timing of this action was exactly as described by Mr. Tepfer. *Id.* This same day, August 9, 2022, CCSAO issued a Press Release relating to the vacating of the convictions which quotes Ms. Foxx stating that the vacating of these convictions was the product of a "comprehensive case-by-case review" which "revealed police misconduct by Guevara that called the validity of these convictions into question." *See* Ex. 8. Ms. Foxx also stated that CCSAO had "concluded that the totality of the evidence currently available is insufficient to support a retrial of these cases." *Id.* Finally, Ms. Foxx stated that "[w]hen it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago." *Id.* The Press Release also referenced the existence of a "long-term investigation" that "was initiated in 2019." *Id.*

On the same day, Ms. Foxx gave a press conference on these matters. *See* https://www.youtube.com/watch?v=DU-BdnXeYz4&t=50s. Ms. Foxx again referenced the review

6

that CCSAO supposedly conducted (including Mulero's) and referenced the "length of time that it has taken [CCSAO] to review these cases" but stated that "justice requires that we are meticulous and as thorough as we can be." *Id.* at 3:20-4:15. Ms. Foxx noted that the cases were all murder convictions and thus, CCSAO wanted to make sure that it "put in every available resource to ensure the right outcomes." *Id.* Ms. Foxx then thanked all of the "dedicated prosecutors, investigators and staff of the CCSAO for their intensive labor on the review of these cases." *Id.* After making these statements, Ms. Foxx took questions from the press for an extended period of time. *Id.* at 4:34-25:09. This included a question if these convictions were vacated on a finding of innocence (for which Ms. Foxx answered that this was *not* the position of CCSAO) (*id.* at 4:34-5:10) and a request to provide what "specifically lead [her] to this conclusion" that the cases should be vacated which prompted a lengthy answer from Ms. Foxx in which she excoriated Guevara for supposedly having told "bold-faced lies" as well as manipulated identifications, coercively interrogated people, and hid evidence (*id.* at 5:10-7:18).

On October 12, 2022, Mendoza filed her own post-conviction petition and this too was originally assigned to ASA Rogala. Ex. 5 at 219:8-222:19. Within weeks, before an investigation occurred, ASA Rogala was directed to simply agree to the relief requested by Mendoza. *Id.* at 222:20-229:5. In other words, the "vacate all Guevara cases" policy referenced by Mr. Tepfer (and attributed to Ms. Foxx) appears to have been adopted in Mendoza's case as well.

Several months after the Press Release and the press conference, Ms. Foxx again voluntarily discussed CCSAO's actions in the Mulero case. *See* https://www.cityclub-chicago.org/video/3564/state-s-attorney-kimberly-m-foxx. At the time, Ms. Foxx was announcing her decision not to run for another term as Cook County State's Attorney. *Id.* Ms. Foxx lamented that she was continually being asked to explain her actions regarding the Jussie Smollett case instead of discussing her accomplishments. *Id.* at 29:00-34:30. Ms. Foxx's cited as an accomplishment her decisions to facilitate the vacating of the convictions of several people (two of whom were supposed

7

victims of Guevara). *Id.* Mulero was one of the people discussed. *Id.* Ms. Foxx stated that Mulero "went to prison for a crime which she didn't commit" and "in which she was wrongfully convicted based upon the evidence and the testimony of a corrupt police officer." *Id.* at 33:53-34:30. Ms. Foxx gestured for Mulero to stand up and solicited a round of applause. *Id.* Foxx's 2023 statement about Mulero at this event is cited in Mulero's Complaint. *See* Dckt. No. 1 at ¶ 7.

Despite Ms. Foxx's repeated discussion of the supposed investigation that was done by the CCSAO in relation to Mulero's case and the merits thereof, the investigation Ms. Foxx touted remains shrouded in mystery. Neither of CCSAO's 30(b)(6) deponents knew what Ms. Foxx was referring to in these public statements with respect to the investigation done and findings made except saying that neither of their units did such an investigation. *See* Ex. 2 at 200:7-208:2; Ex. 5 at 235:14-239:16. CCSAO has also not produced a single piece of paper documenting an investigation with respect to Mulero's or Mendoza's case nor did it make a claim of privilege.

### III. ARGUMENT

There is no dispute that Ms. Foxx must sit for a deposition. Not only did this Court already grant Defendants leave to proceed with this deposition (*see* Dckt. No. 158) and further clarify that Ms. Foxx must sit for deposition on matters within the scope of Defendants original 30(b)(6) notice on which the other deponents could not testify (*see* Dckt. No. 167), but the CCSAO itself does not contest that Ms. Foxx must provide deposition testimony (*see* Dckt. No. 163). Rather, citing the *Apex* Doctrine and Deliberative Process Privilege, CCSAO attempts to impose an arbitrarily restrictive set of scope limitations, limit it to two hours, and seeks that the deposition not be videotaped. *Id.*

1. **The *Apex* Doctrine Does Not Apply.**

The CCSAO's first attempt to limit the scope of Ms. Foxx's deposition relies upon the so-called *Apex* doctrine. *See* Dckt. No. 163 at 6-7. This argument is not a basis to impose the requested restrictions. This Court has already ruled she can be deposed about the topics that the other Rule

8

30(b)(6) deponents could not answer. As the CCSAO acknowledges, Ms. Foxx is *not* protected from the deposition at issue here by the *Apex* Doctrine. *See* Dckt. No. 163 at 7 ("CCSAO acknowledges that the apex doctrine does not entirely preclude the deposition of Ms. Foxx under the specific facts and circumstances presented here."). For good reason, Ms. Foxx does have "unique personal knowledge of the matter in dispute," and that the information sought cannot "be garnered from other witnesses" or "other discovery methods." *See supra* Part II. When served with Defendants' Rule 30(b)(6) notice, the CCSAO was obligated to designate witnesses with knowledge to talk about the supposed investigation done by the CCSAO in this case.

Despite the fact that its two designees could not provide any testimony in response to the notice and both pointed to Ms. Foxx as the person with knowledge, the CCSAO inexplicably argues that, with respect to "topics of policy, practice, and how the post-conviction matters of Ms. Mulero and Ms. Mendoza were evaluated and investigated are not appropriate topics for Ms. Foxx" and that "Ms. Foxx is not the appropriate witness to provide those answers." Dckt. No. 163 at 7. This argument is utterly meritless. The CCSAO was required to designate witnesses pursuant to Defendants' 30(b)(6) subpoena and the witnesses the CCSAO produced both disclaimed any knowledge of these matters whatsoever. Rogala, however, testified that Ms. Foxx instructed her to take a specific course of action to agree to post-conviction relief and both Rogala and Weber disclaimed any knowledge that any actual investigation into Mulero and Mendoza's cases took place whatsoever despite Ms. Foxx's statements to the contrary. Ms. Foxx is precisely the right person to ask about these matters given it was she who made the decision, she who met with the Exoneration Project, and she who made repeated public statements about matters that the CCSAO has been unable to substantiate with any other person with knowledge.

   2. **The Deliberative Process Privilege Either Does Not Apply Or Has Been Waived.**

The CCSAO is somewhat unclear as to what it seeks to have this Court limit. As the CCSAO correctly notes, Guevara's counsel attempted to compromise and give it an even more narrowed list of specific topics for the deposition of Ms. Foxx than to address gaps in their original unfulfilled 30(b)(6) notice in attempt to compromise on the scope of this deposition. *See* Dckt. No. 163 at 3. On the one hand, the CCSAO only claims Deliberative Process Privilege over topics 2, 3, 5, 6, 7, and 10. *See* Dckt. No. 163 at 8-9. On the other hand, however, CCSAO also argues that Ms. Foxx's deposition should be limited to Ms. Foxx testifying about communications she had with Ms. Mulero's lawyer, Josh Tepfer, and "specific public statements about the vacatur of convictions tied to Defendant Guevara, including statements about Ms. Mulero's case." *See* Dckt. No. 163 at 7-10.

The CCSAO bears the burden of proving that good cause exists to restrict discovery into otherwise relevant topics. *See Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007). Because the CCSAO has not provided any reason for restricting Ms. Foxx's testimony on topics 1, 4, 8, 9, and 11, they have waived any objection to Ms. Foxx providing testimony on these topics and there is no basis to bar Ms. Foxx from testifying on these topics. *See* Fed. R. Civ. P. 26(b)(2); *City of Rockford v. Mallinckrodt ARD, Inc*, 2020 WL 1675593, *4-5 (N.D. Ill. 2020) ("[t]he party seeking protection from discovery bears the burden of presenting a particular and specific demonstration of facts as to the need for that protection"); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (undeveloped arguments waived); *United States v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999) (same).

With respect to the remaining topics, these topics are largely centered on the CCSAO's general policies and practices that were actually applied to the investigation and decision to agree to post-conviction for Mulero and Mendoza. *See* Dckt. No. 163 at 7-10. The CCSAO's arguments consist of boilerplate which discusses the general nature of the Deliberative Process Privilege and does not engage on any of the specific facts here. Dckt. No. 163 at 7-10. The entirety of the CCSAO's argument is just a listing of the topics sought by Defendants followed by conclusions that the privilege applies.

10

*Id.* In support, the CCSAO attaches the affidavit of Cristin Duffy, the CCSAO's general counsel, which, again, consists of listing the proposed topics sought by Defendant from Ms. Foxx accompanied by Duffy's conclusions that such topics are covered by privilege. *See* Dckt. No. 163-8 at ¶¶ 1-5.

First, Deliberative Process Privilege does not apply. The topics contested by CCSAO are, in essence, Ms. Foxx being asked to testify about actions which her office took and adopted as its final decision, not unadopted deliberative matters. *See* Dckt. No. 163 at 3-5 (listing Topics which limit topics on policies, practices, and standards "applied by CCSAO," whether certain policies were actually abandoned by CCSAO, and whether CCSAO in fact "implemented a new set of policies, practices, and standards beginning in 2022"). The deliberative process privilege applies if the information sought is both "'predecisional'—generated *before the adoption of an agency policy*—and 'deliberative'—reflecting the give and take of the consultative process." *Myles*, 2023 WL 4976212, at *2; *Holmes v. Hernandez*, 221 F. Supp. 3d 1010, 1016 (N. D. Ill. 2016) *quoting Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Indem. Ins. Co. of N. Am.*, 1989 WL 135203, at *2 (N.D. Ill. 1989)); *see also Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015). The privilege does not extend to information that "an agency adopts ... as its position on an issue." *Myles*, 2023 WL 4976212, at *2; *Holmes*, 221 F. Supp. 3d at 1016; *Hobley*, 445 F. Supp. 2d at 996 (recommendation at issue reflected agency's final decision and the basis of that decision, and "thus is post-decisional and not protected by the deliberative process privilege"). To the extent Defendants merely seek to have Ms. Foxx testify about the actual standards applied by her office and decisions made and adopted as policy, Deliberative Process Privilege does not apply. *Id.*

Second, even if Deliberative Process Privilege applied, it is difficult to conceive of a more explicit example of waiver. The deliberative process privilege, like other privileges, can be waived. *See DeLeon-Reyes*, 2021 WL 3109662, at *5; *Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990, 998 (N.D. Ill. 2006). Here, the CCSAO has designated two witnesses to testify on its behalf as to questions on the exact same topics that the CCSAO now tries to shield Ms. Foxx from answering

11

herself. *See* Ex. 2, Ex. 5. The designees, unfortunately, were not able to provide the information because they lacked sufficient knowledge to testify and each pointed to Ms. Foxx, who as stated above had already made numerous public statements about the Mulero and Mendoza cases, as the source of the information. *See supra* Part II. The fact remains that the CCSAO expressly waived privilege on these issues by letting them testify to these matters. Not only that, this Court has already ruled that Ms. Foxx must testify to the topics that the two designees were unable to answer. This ship has sailed.

Ms. Foxx not only repeatedly publicly talked about the supposed "comprehensive" review that the CCSAO did prior to agreeing to vacate Mulero's conviction but also explicitly talked about the standards her office applied in doing so. *See supra* Part II. This is not only apparent from the press release Ms. Foxx issued but the fact that Ms. Foxx specifically responded to questions from the press about the process that led to CCSAO's actions in Mulero's and Mendoza's cases. *Id.* Ms. Foxx also went so far as to proclaim that Mulero was innocent and that CCSAO had concluded that she "was wrongfully convicted based upon the evidence and the testimony of a corrupt police officer," despite literally saying the exact opposite four years earlier in opposing Mulero's request for clemency (*see* Ex. 1) and publicly telling the press in 2022 that the vacating of the 8 convictions (of which Mulero was one) were not based on innocence. *Id.* Any ability to shield this information was lost long ago.

Providing public statements about an agency's decision waives any right to apply privilege to the subject matter so discussed. *See DeLeon-Reyes*, 2021 WL 3109662, at *5-6 (CCSAO waived deliberative process privilege by discussing publicly reasons case was vacated pursuant to *nolle prosequii*); *Williams v. City of Chicago,* 2023 WL 6213716, *6 (N.D.Ill. 2023) (waiver where prosecutor described decision to *nolle* charge and who described "thorough reevaluation of the evidence" CCSAO performed, including review of "[a]ll the video that was collected by the Chicago Police Department, statements taken, circumstantial evidence," and "additional forensic testing."); *Howard v. City of Chicago,* 2006 WL 2331096, *8 (N.D.Ill. 2006)(waiver where governor spoke publicly "for the purpose of

responding to questions…regarding his decision to pardon Plaintiffs" and "opened himself to, and responded to, any questions…on that topic…"); *Hood v. City of Chicago, et al.*, No. 16-cv-01970 (N.D. Ill. Mar. 19, 2019), Dckt. No. 247 at 2 (deliberative process privilege waived by governor by "detail[ing] his decision to commute the sentence of the Plaintiff in a variety of public forums."); *Fulton v. City of Chicago*, et al., No. 17-cv-08696, Dckt. No. 293 at 13-14, 17-18 (same where prosecutors publicly discussed the rationale for decisions to first seek a retrial and then move to dismiss).

Even more, the CCSAO decided to involve outside third parties in its own "deliberations" regarding its policy toward Guevara cases. The CCSAO cannot dispute that Ms. Foxx has discussed the review, the policies and procedures, and the implementation with a third-party—the Exoneration Project. She worked with the Exoneration Project to develop the Office's approach. The Exoneration Project represented Mulero at the time and whose firm, Loevy & Loevy, also serves as plaintiff's counsel in over 20 lawsuits against Guevara and the City. *See* Ex. 6-7. While Ms. Foxx can provide more detailed information about these meetings and their content and purpose, it appears the apparent lobbying efforts by the Exoneration Project were successful. They appear not only to have been the impetus for implementing a Guevara-specific case review policy in 2020 but also appear to have successfully convinced Ms. Foxx to scrap that same policy in favor of an *even more-lenient one* which included not investigating or defending *any Guevara case*. Ms. Foxx's decision to include non-CCSAO parties with a vested interest in her policy deliberations waives any privilege over this topic. *See Hobley*, 445 F. Supp. 2d at 998-99 ("Where an authorized disclosure is voluntarily made to a non-federal party, whether that disclosure is denominated 'confidential,' the government waives any claim that the information is exempt from disclosure under the deliberative process privilege."); *In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997) (information voluntarily revealed to third parties waives privilege).

Finally, the CCSAO argues that "the City Defendants have not articulated a particularized need to know why or how the CCSAO decided to not object to post-conviction relief for plaintiffs,

13

to MSNP the charges against plaintiffs, and to not intervene in their COI petitions." *See* Dckt. No. 163 at 10. This again is an utterly meritless argument, and again retreads issues that Defendants already won, or have been waived through the prior discovery conducted with the CCSAO, including the Rule 30(b)(6) depositions. Plaintiffs have put the vacating of their convictions and their obtaining COIs front and center in this lawsuit and Ms. Foxx's position as to their cases. *See* Dckt. No. 1 at ¶ 7. They seek to use this information as evidence of their actual innocence, to satisfy the *prima facie* elements of their Malicious Prosecution claims, and as proof of damages. Evidence about the investigation and the standards applied will allow the district judge and jury to place the appropriate weight on this evidence. *See Patrick v. City of Chicago*, 974 F.3d 824, 832-33 (7th Cir. 2020) ("The district judge held—and we agree—that Patrick's certificate of innocence was directly relevant to an element on which he bore the burden of proof: that the prosecution against him was terminated in a manner indicative of innocence."). If, as Ms. Foxx publicly contended, her office did an exhaustive investigation into Plaintiffs' claims spanning years and for which CCSAO dedicated countless hours of investigation, this would tend to bolster the weight on the evidence in Plaintiffs' favor. If CCSAO did little or no investigation at all, that would cut the other way and minimize the probative value of this evidence. Ms. Foxx is the only witness with knowledge to do so.

    **3. The Request For A Two-Hour Limit And Ban On Video Recording Must Be Rejected.**

The CCSAO wants this Court to prospectively limit Ms. Foxx's deposition to two hours and order that the deposition not be videotaped. The CCSAO fails to substantiate either form of relief.

Defendants attempted to work with the CCSAO on reasonable time estimates for her deposition. In order to do that, Defendants requested that CCSAO provide a basic preview about what Ms. Foxx may testify to at her deposition so Defendants could gauge how long a deposition might need to last. CCSAO has not provided this information. Accordingly, it would be highly unfair to arbitrarily limit Defendants to a time where the subject matter is appropriately limited. Ms. Foxx

14

has relevant information on these topics and Defendants do not know the exact extent of the information that she can provide. Since the subject matter is limited, that should serve as an adequate protection of Ms. Foxx's time, as well as allow Defendants the opportunity to get fulsome answers.

With respect to not video-recording the deposition, there is neither a legal basis for this nor any other reason for it. *See* Dckt. No. 163 at 10-11. Rule 30 allows video recording depositions. The CCSAO fails to cite any authority demonstrating why Rule 30 does not apply or even explain why barring Defendants from recording the deposition would be appropriate. Ms. Foxx may be called to testify at trial but, like any other witness, may not be available when the trial commences. Video recording depositions is routine, and Defendants have video-recorded every deposition in this case. Witnesses can move or become unavailable as trial nears and these depositions end up being played before a jury. Reading a cold transcript to a jury is not remotely a sufficient replacement for actually seeing and hearing a person testify.

Ms. Foxx is a public figure whose identify is well known, and she has not only been interviewed on video or in televised press conferences countless times in her career, she has done so on these very cases. Her position as a previous public figure does not shield her—in fact, it is a reason that a video-taped deposition is all the less intrusive from the average witness who is a private citizen otherwise unknown to be connected to a case. Many top public officials have sat for video-taped depositions, including Presidents of the United States.[4] In sum, the CCSAO does not provide any basis under Rule 26 for a protective order barring the video recording of Ms. Foxx's deposition. Having failed to carry their burden, the motion's request to ban video recording the deposition must be denied.

WHEREFORE Defendants prays this Court deny CCSAO's Motion for Protective Order and for whatever other relief this Court deems fit.

---

[4] https://www.c-span.org/program/public-affairs-event/former-president-trump-deposition-in-e-jean-carroll-civil-case/627510.

Respectfully submitted,

By: /s/ Timothy P. Scahill
    Timothy P. Scahill
    Special Assistant Corporation Counsel

Steven B. Borkan
Timothy P. Scahill
Andrea F. Checkai
Whitney N. Hutchinson
BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
*Counsel for Reynaldo Guevara*

/s/ Josh M. Engquist
    Josh M. Engquist
    Special Assistant Corporation Counsel

Josh M. Engquist
Caroline P. Golden
David A. Brueggen
Jeffrey R. Kivetz
Kyle T. Christie
Allison L. Romelfanger
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson, Suite 1240A
Chicago, Illinois 60604
*Counsel for Individual Defendants*

/s/ Eileen E. Rosen
    Special Assistant Corporation Counsel

Eileen E. Rosen
Catherine M. Barber
Lauren Ferrise
Rock, Fusco, & Connelly
333 W. Wacker, 19th Floor
Chicago, Illinois 60606
*Counsel for Defendant City of Chicago*

16