## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MADELINE MENDOZA,** | ) | |
| | ) | **No. 23 CV 2441** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **CITY OF CHICAGO,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| **MARILYN MULERO,** | ) | |
| | ) | **No. 23 CV 4795** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF CHICAGO,** *et al.*, | ) | |
| | ) | **February 20, 2026** |
| **Defendants.** | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiffs Madeline Mendoza and Marilyn Mulero bring this action against Defendants for causing their wrongful convictions for the May 1992 murders of Jimmy Cruz and Hector Reyes. Before the court is Subpoena Respondent Cook County State's Attorney's Office's ("CCSAO") motion for protective order to limit the scope, duration, and means of recording the deposition of its former Cook County State's Attorney Kimberly M. Foxx ("Foxx"). For the following reasons, the motion is granted in part and denied in part:

## Background

In September 2025 Defendants moved for leave to depose Foxx because CCSAO's Rule 30(b)(6) designees were unable to answer certain questions during their depositions. For instance, the designees testified that the Post Conviction Unit ("PCU") was responsible for investigating Mulero's March 2022 petition for post-conviction relief and recommending to Foxx what CCSAO's responsive course of action should be. (R. 154 at 3.) The designees further testified that Foxx directed the PCU not to oppose the petition, but they could not explain why. CCSAO also declined to oppose Mendoza's post-conviction petition. As a result, the state court vacated Plaintiffs' convictions and CCSAO eventually dismissed the murder charges against them. (R. 163, CCSAO Mot. at 2.) Plaintiffs then filed petitions for certificates of innocence ("COI") which the state court granted in 2023 and 2024 without any opposition from CCSAO. (Id.)

Because this court found that CCSAO failed to adequately prepare its designees to answer questions about Plaintiffs' post-conviction proceedings, it granted Defendants' motion for leave to depose Foxx as the individual with the information they seek. (R. 158, Sept. 8, 2025 Order ("[W]here Defendants did nothing wrong and a third-party respondent failed to adequately prepare its designees, this court could impose sanctions on CCSAO and require it to produce another designee who can answer the questions—presumably only after conferring with Foxx—or allow Defendants to cut out the middleman and depose Foxx. The

latter approach appears to be more efficient and in line with the objectives of Rule 1.").)

**Analysis**

CCSAO does not oppose producing Foxx for a deposition but objects to the scope of the proposed topics and any video recording of the proceeding. (R. 163 at 5, 10-11.) CCSAO first argues that Defendants' deposition questions must be limited to information Foxx has about Plaintiffs' specific cases and cannot delve into CCSAO's general policies and practices about post-conviction proceedings. CCSAO next says that the court should bar many of the topics Defendants seek to cover based on the deliberative process privilege ("DPP"). Finally, CCSAO asserts that Foxx's deposition should be limited to two hours and should not be video recorded.

## A. Scope

The court does not find the proposed topics for Foxx's deposition to be overly broad. After the court granted Defendants leave to depose Foxx, Defendants emailed CCSAO the following proposed deposition topics:

> 1. The existence and substance of any investigation conducted by CCSAO (and any conclusions reached) between September 2019 and August 9, 2022 into claims or allegations of any misconduct relating to the convictions of Mulero and Mendoza other than: (1) the investigation conducted by CCSAO's Post-Conviction Unit as testified to by Carol Rogala; and (2) the investigation conducted by CCSAO's Conviction Integrity Unit as testified to by Adam Weber. This must include, but should not be limited to, the existence and substance of the "case comprehensive case-by-case review" referenced by Ms. Foxx in CCSAO's August 9, 2022 Press Release, the factual and evidentiary basis of the alleged "police misconduct by Guevara that called the validity of th[is] conviction[] into question," what constituted "the totality of the evidence currently available" that made it insufficient to support a retrial of Mulero's case, and what evidence/investigation was

3

relied upon in stating that "the allegations of misconduct against Guevara had significant merit" as it pertained to Mulero's case.

2.      The policies, practices, and standards applied by CCSAO in investigating claims or allegations of any misconduct relating to the police investigation into and convictions of Mulero and Mendoza between September 2019 and January 2023 other than: (1) the policies, practices, and standards of CCSAO's Post-Conviction Unit as testified to by Carol Rogala in her deposition; and (2) policies, practices, and standards of CCSAO's Conviction Integrity Unit as testified to by Adam Weber in his deposition.

3.      The policies, practices, and standards applied by CCSAO (and any facts or evidence relied upon by CCSAO) in agreeing to post-conviction relief sought by Mulero and Mendoza other than: (1) the policies, practices, and standards of CCSAO's Post-Conviction Unit as testified to by Carol Rogala in her deposition; and (2) policies, practices, and standards of CCSAO's Conviction Integrity Unit as testified to by Adam Weber in his deposition.

4.      Whether CCSAO performed any investigation into any claims or allegations of misconduct by former Detective Reynaldo Guevara as part of its decision to implement the Guevera Case Review Protocol and the identities of persons involved in any such investigation and the facts and evidence relied upon by CCSAO in implementing the Guevara Case Review Protocol and, if so, the substance and findings of any such investigation.

5.      Whether the standards set forth in CCSAO's Guevara Case Review Protocol were applied by CCSAO in agreeing to post-conviction relief sought by Mulero and/or Mendoza.

6.      Whether CCSAO (formally or informally) abandoned investigating or evaluating post-conviction cases under the Guevara Case Review Protocol subsequent to the departure of Adam Weber in June 2022 and the circumstances of any such abandonment.

7.      Whether CCSAO (formally or informally) implemented a new set of policies, practices, and standards beginning in 2022 in post-conviction cases involving former Detective Reynaldo Guevara and, if so, the substance of policies, practices, and standards.  To the extent the implementing of such policies involved consultation with or consideration of information from persons or entities outside of

CCSAO, a complete explanation of the information provided by such persons or entities.

8.      Any communications (written, electronic, or oral) involving Ms. Foxx with attorneys/employees of any attorneys representing Mulero/Mendoza relating, in whole or in part, to post-conviction matters of Mulero and/or Mendoza including, but not limited to, Josh Tepfer, Anand Swaminathan, and Steve Art of the Exoneration Project, between March 2022 and January 2023. These topics must include, but are not limited to, Ms. Foxx's full recollection of any communications involving her and attorneys from the Exoneration Project between March 2022 through January 2023 including, but not limited to those referenced in e-mail correspondence produced by CCSAO in June and July 2025.

9.      The circumstances surrounding and following CCSAO's meetings with members of the Exoneration Project in March 2020 which precipitated the drafting and approval of the Guevara Case Review Protocol as testified to by Adam Weber.

10.     The existence and substance of any investigation conducted by CCSAO and the policies, practices, and standards applied by CCSAO (and any facts or evidence relied upon by CCSAO) in not opposing the Petitions for Certificate of Innocence filed by Mulero and Mendoza.

11.     The complete factual, investigatory, and evidentiary basis and circumstances of Ms. Foxx's statements made on April 25, 2023 regarding Mulero including, but not limited to, that "Marilyn Mulero went to prison for a crime she didn't commit…a crime she didn't commit in which she was wrongfully convicted based upon the evidence and testimony of a corrupt police officer.

(R. 163-5 at 2-3.)

Despite some posturing, the parties agree that Foxx's testimony should be limited to unique information she has about Plaintiffs' post-conviction proceedings. (See R. 163, CCSAO Mot. at 7; R. 169, Defs.' Resp. at 9.)  And even though most topics mention "CCSAO," a review of the topics shows that Defendants are only interested in questioning Foxx about the policy and practice she followed and

personally directed in connection with Plaintiffs' post-conviction petitions and complaints about Defendant Reynaldo Guevara. This scope is appropriate given testimony from CCSAO designees indicating that Foxx excluded the units responsible for investigating post-conviction petitions from the evaluation and decision process. However, Defendants must be mindful that their questions cannot exceed Foxx's own involvement in the investigation, evaluation, and decision-making process pertaining to Plaintiffs' petitions, if any.

**B.    Privilege**

CCSAO also argues that DPP bars Defendants from exploring Topic Nos. 2, 3, 5-7, and 10 with Foxx. As the entity seeking to withhold information, CCSAO bears the burden of establishing that DPP applies. *See Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020). And "because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Walls v. Vasselli*, No. 19 CV 6468, 2022 WL 1004248, at *2 (N.D. Ill. April 4, 2022) (citing *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (internal quotations omitted)). DPP is "a form of executive privilege," developed to "protect[] 'inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.'" *U.S. Fish & Wildlife Serv. v. Sierra Club*, 592 U.S. 261, 267 (2021). DPP serves "[t]o encourage candor" and "blunt[] the chilling effect that accompanies the prospect of disclosure," thereby enabling officials to

"communicate candidly among themselves" without fear of "each remark [becoming] a potential item of discovery and front page news." *Id.* (internal quotations and citation omitted). To withhold discovery based on DPP:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Evans v. City of Chi.*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (citation omitted). If this *prima facie* showing is made, the requesting party then has the burden of demonstrating a "particularized need" for the information. *Id.* (quotations and citations omitted). In determining whether this burden is met, the court considers:

> (1) the relevance of the [information] to the litigation; (2) the availability of other evidence that would serve the same purpose as the [information] sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the [information] sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

*K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997); *see also Alfred v. Duhe,* No. 24 CV 274, 2025 WL 3766412, at *9 (W.D. La. Dec. 30, 2025) (holding that DPP is a qualified privilege and "[t]hus, courts have found that a litigant may obtain such deliberative materials if his or her need for accurate fact finding override[s] the government's interest in nondisclosure").

Here, CCSAO formally raises DPP through its General Counsel Cristin Duffy. CCSAO asserts that Foxx should not be forced to answer questions regarding decisions "to not object to [Plaintiffs'] post-conviction relief," "to dismiss

the charges against them, and to not intervene in their petition[s] for COI[],"
including regarding "any internal dialogue about a proposed decision, what
positions and recommendations were expressed by those involved and any debate
that occurred, and what weight was given to each of the various factors considered,
or to any particular piece of evidence, and why." (R. 163 at 10.) Duffy explains in
her declaration that Foxx must be protected from disclosing such information to
allow for "candid and frank discussions of legal and policy matters within CCSAO"
and to prevent the internal deliberations from being subjected to "outside influence"
and "manipulat[ion]." (R. 163-8 at 3.) Defendants argue that DPP does not apply to
the topics identified and even if the privilege applies, CCSAO waived it.

The court finds that DPP does not apply to Topic Nos. 2, 3, and 5-7 and even
if the privilege applies, CCSAO has failed to meet its burden to raise it. Through
these topics, Defendants seek to understand the policy and standard Foxx applied
and followed when considering Plaintiffs' petitions for post-conviction relief and for
COI. Defendants seek this information because CCSAO testified that Foxx did not
rely on the units within CCSAO responsible for addressing these issues. Instead,
Foxx made decisions on her own based on her own investigations and process.
Defendants seek to understand the process Foxx followed and the information she
received. These topics do not require questions about internal debates between
Foxx and others, or how she considered or evaluated the information she received.
Rather, the inquiries are factual in nature, so DPP does not apply.

8

Even if DPP applies here, CCSAO failed to meet its burden for raising it. In her October 2025 declaration, Duffy said these topics "implicate the decision-making process of CCSAO, involve the type of information necessary for the candid and frank discussions of legal and policy matters within CCSAO, and are essential to decision-making processes of CCSAO," and that "[t]o divulge the process by which the CCSAO investigates and determines how it handles its cases, including post-conviction and certificate of innocence matters, would open them up to outside influence," such that "[i]nterested individuals outside of the CCSAO may try to manipulate the process itself in order to achieve a favored outcome." (R. 163-8 at 3.)

Duffy fails to include specific information explaining why DPP must protect Foxx. *See Gonzalez v. Guevara*, No. 23 CV 14281, 2025 WL 1348736, at *1-2 (N.D. Ill. April 15, 2025). For instance, Duffy does not identify or describe the types of information or communications Foxx must be allowed to withhold based on DPP. Nor does Duffy explain how "disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Emuwa v. U.S Dep't Homeland Sec.*, 113 F.4th 1009, 1015 (D.C. Cir. 2024). Conclusory language in a declaration or affidavit is rarely sufficient to properly raise DPP, and it is not sufficient here. Moreover, this case is unique because the court granted Defendants leave to depose Foxx because she did not adhere to CCSAO's established internal policy and practice for deliberating the issues in question, and there is ample evidence that Foxx

nevertheless invited and considered outside information when considering Plaintiffs' cases.

As for Topic No. 10, CCSAO appears to satisfy its initial burden of showing that DPP applies because Defendants seek to discover how Foxx applied her standard or procedure to the information she received and how such information influenced her decision not to oppose Plaintiffs' post-conviction petitions. That said, CCSAO waived any right to raise DPP. First, CCSAO did not assert DPP during the Rule 30(b)(6) depositions. Instead, when asked about the basis for electing not to oppose Plaintiffs' petitions for post-conviction relief and COI, CCSAO's designees answered that they could not because Foxx made the decisions on her own—not because DPP protects such information from disclosure. (See R. 158.) Second, Foxx made public statements related to this topic. For example, on August 9, 2022, CCSAO issued a press release quoting Foxx as stating that, "the vacating of these convictions was the product of a 'comprehensive case-by-case review' which 'revealed police misconduct by Guevara that called the validity of these convictions into question, and we concluded that the totality of the evidence currently available is insufficient to support a retrial of these cases.'" (R. 169-8 at 2.) This same press release referred to a "'long-term investigation'" that started in 2019 and indicated that CCSAO would take similar court actions on "several additional cases involving Guevara's alleged police misconduct." (Id.) These public comments opened the door to questions regarding the same. *See Hobley v. Chi. Police Commander Burge*, 445 F. Supp. 2d 990, 998 (N.D. Ill. 2006). Third, the record shows that CCSAO

conferred about the cases involving Guevera with others outside the organization. (See R. 169, Defs.' Resp. at 13-14; R. 171 (filed under seal); R. 172 (filed under seal).) As such, Duffy's declaration is insufficient to establish that DPP applies here.

Even if CCSAO did not waive its right to raise DPP as to Topic No. 10, Defendants demonstrate a particularized need to know why CCSAO decided not to oppose Plaintiffs' petitions for post-conviction relief and COI—and according to CCSAO itself, Foxx is the only individual who can address these topics. Given that Plaintiffs plan to offer their COIs into evidence and the court has yet to determine their admissibility, Defendants are entitled to discover information surrounding CCSAO's decision not to oppose the COI petitions. This court finds that context surrounding the non-oppositions is essential to a fair evaluation of the COIs. As Defendants correctly point out, this information could also be helpful to Plaintiffs. In any event, for the foregoing reasons and because the record is devoid of any information indicating that the disclosure of the same would jeopardize or chill future deliberations among CCSAO personnel from addressing post-conviction petitions, Defendants are entitled to it.

## C.  Protocol

CCSAO asks the court to direct Defendants to complete Foxx's deposition within two hours and to bar them from video recording the deposition. Under Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person

subject to the subpoena. The court for the district where compliance is required must enforce this duty." Having weighed the burden on CCSAO and Foxx against Defendants' need for sufficient time to cover the identified topics, this court finds that Defendants should be granted at least four hours of questioning. If Plaintiffs wish to ask follow-up questions, such questioning is limited to one hour.

As for CCSAO's request to bar Defendants from video recording the deposition, the motion is denied. Defendants correctly point out that Rule 30(b)(3) allows deposition testimony to be recorded "by audio, audiovisual, or stenographic means." While the court has discretion to specify the means for recording the deposition, video recording is common and routine and may be beneficial in the event Plaintiffs and Defendants need to use Foxx's deposition testimony as evidence under Rule 32. That said, this court is mindful of the potential for the misuse of video recordings of public figures. Accordingly, any such video may only be used for litigating this case.

## Conclusion

For the foregoing reasons, CCSAO's motion is granted in part and denied in part as specified herein.

ENTER:

Young B. Kim
United States Magistrate Judge